## A. Bloch, Respondent, v. S. G. Price et al., Appellants.

St. Louis Court of Appeals, December 21, 1886.

1. Partnership — Liability of Retiring Partner — Estoppel. — The liability of a retiring partner to former customers of the firm, who continue to trade with it after dissolution, rests on the principle of estoppel, and has no application to one who never knew who composed the firm.

2. ——— A retiring partner is not liable, on subsequent transactions, to a customer of the firm who never knew who the partners were, although such customer had no notice of the dissolution of the firm.

8. ——— To render a retiring partner liable on transactions occurring after the dissolution, on the ground of want of notice of dissolution, the customer must have been either a regular or a recent customer of the firm.

APPEAL from the St. Louis Circuit Court, DANIEL DILLON, Judge.

*Reversed and remanded.*

C. F. JOY and NAPTON & FROST, for the appellants: It must be shown that the plaintiff knew that the retir-· ing partner was a member of the firm. *Pratt v. Page*, 32 Vt. 13. One transaction with the firm years before will not constitute the plaintiff a customer. *Whitman v. Leonard*, 3 Pick. 177 ; *Costello v. Nixdorff*, 9 Mo. App. 505.

MILLS & FLITCRAFT, for the respondent: A person dealing with a partnership composed of certain individuals has a right to presume that the same members continue until actual notice of such change is received. *Pope v. Risley*, 23 Mo. 187 ; *Donzelot v. Rawlings*, 58 Mo. 75 ; *Martin v. Fewell*, 79 Mo. 412 ; *Costello v. Nixdorff*, 9 Mo. App. 505 ; *Anslyn v. Frank*, 11 Mo. App. 598 ; *Graves v. Gilbert*, 6 Cowen, 701. Although the name may not be known, yet if the partnership relation existed, those dealing with the firm are entitled to hold all who are partners, even if they do not know their names, and may continue to hold such as were partners if they have given no notice. *Deford v. Reynolds*, 36 Pa. St. 333 ; *Shamburg v. Ruggles*, 83 Pa. St. 148. Members of a firm using the expression " & Company" can not be considered dormant partners. *Deering v. Flanders*. 49 N. H. 225.

Thompson, J., delivered the opinion of the court.

On November 12, 1881, a partnership was formed in the city of St. Louis for the carrying on of a commission business, between William M. Price, Stephen G. Price, Darwin W. Marmaduke, and Leslie Marmaduke. The partnership was advertised and the names of all the four partners appeared on the bill heads, letter heads, and other stationery used by the firm. Darwin W. Marmaduke retired from the firm in the spring of 1882, but no notice was given at that time of his retiring. William M. Price retired from the firm in October or November, 1882, but no notice was given of his retiring at that time. Leslie Marmaduke retired from the firm in the fall of 1883, but no notice appears to have been given at that time of his retiring. The business remained in the hands of Stephen G. Price alone, and was conducted in the firm name, until July 1, 1884, when a formal notice of the dissolution of the firm was published for three successive days in the *St. Louis Republican* and the *St. Louis Globe-Democrat*, two newspapers printed in the city of St. Louis. A notice was also mailed, as the evidence at the trial of this cause tended to show, to every customer whose name appeared upon the current books of the firm. It does not appear that the plaintiff's name appeared upon the current books of the firm, and no evidence was adduced that notice of the dissolution of the firm had ever been communicated to him, and he testified that he had never received such notice. The business continued to be transacted after the first of July, 1884, in the firm name of Price, Marmaduke & Co., by Stephen G. Price, but on the letter heads, bill heads, circulars, etc., which he sent out to customers, the name or names of the persons composing the so-called firm were not given.

The plaintiff was a merchant doing business at Minneapolis, in Kansas. In June, 1882, he had sent to the firm of Price, Marmaduke & Company a shipment of

wool, or rather two shipments, for part arrived on one
day and the rest on the following day. It was, however,
substantially one consignment and one transaction.
They immediately sold the wool, and made a prompt re-
mittance to him of the proceeds, less their charges. He
had no further business with them for the space of three
years, namely, until June, 1885, nor does the evidence
disclose that they continued to mail circulars to him or
to solicit consignments from him. So far as the record
discloses, their relations with each other wholly ceased
until the month of June, 1885, when he consigned to the
supposed firm of Price, Marmaduke & Company five
thousand two hundred and fifty pounds of wool and
three hundred and eighty pounds of tag wool. He placed
this wool in the hands of the supposed firm, as commis-
sion merchants, under instructions not to sell it until
they could realize eighteen cents a pound for the wool,
placing no restrictions on them in respect of the price
which they were to get for the tag wool. Considerable
correspondence passed between them with reference to
the consignment, all the letters of the commission firm
containing the caption, "Price, Marmaduke & Co.,"
and being signed, "Price, Marmaduke & Co.," but these
letters do not disclose the name or names of the persons
composing the supposed firm. On the thirty-first of
July, 1885, the wool being on store in the hands of the
supposed firm of Price, Marmaduke & Company, really
in the hands of Stephen G. Price, under the instructions
of the plaintiff not to sell it (except the tag wool) until
eighteen cents a pound could be realized for it, Mr.
Price put the wool up at auction for sale without reserve
and caused it to be sold for seventeen and three-fourths
cents a pound. He made no report of the sale to the
plaintiff, but on the twenty-eighth of August, four weeks
thereafter, failed and made an assignment for the bene-
fit of his creditors, the proceeds of the sale were wholly
lost to the plaintiff, and this action is brought for the

value of the wool, against all the persons who originally composed the firm of Price, Marmaduke & Company, as above stated.

The case was tried by the court sitting as a jury. The court found the issues in favor of the plaintiff as against the defendants, Wm. M. Price, Stephen G. Price, and Leslie Marmaduke, and in favor of the defendant, Darwin W. Marmaduke.

As Darwin W. Marmaduke is shown by the testimony to have retired from the firm before the plaintiff ever had any dealing with it, the court in so holding proceeded upon the theory that, under the state of facts above disclosed, the plaintiff was entitled to hold the defendants, Wm. M. Price and Leslie Marmaduke, although they had retired from the firm prior to the transaction in controversy, on the ground that the plaintiff had had dealings with the firm on credit prior to their so retiring, and that notice of their so retiring had not been communicated to him. The instructions given by the court show that it was tried upon this theory.

The rule is laid down in many cases, in various forms of expression, that a person who has had dealings on credit with a partnership firm is entitled to actual notice of the dissolution of the firm, or of the retiring of one or more of the partners from it; and that if in the case of a dissolution or of the retiring of one or more partners, notice is not in fact communicated to him and he continues to extend credit to the firm, he will be entitled to hold the retiring as well as the remaining partners. The rule, when properly applied, proceeds upon an obvious principle of justice. It rests upon the ground that, by continuing to carry on business in the name of the firm, without giving notice of the change in its membership to those who have previously dealt with it, the remaining partners acquire a false credit with the consent of the retiring partner, whose duty it is to see that such notice is communicated to the previous customers of the firm. The customer is presumed to act upon the belief

that the state of things once existing continues. In short, the foundation of the rule is that the customers continue to extend credit to the firm under the belief that it is composed of the same members as before.

It is a necessary premise of the rule that the customer knew who the members of the firm were at the time when he commenced dealing with them, or at least before giving the credit which affords the basis of the particular controversy, and before the dissolution. It is upon this ground that it is held that the rule has no application to the case of a dormant partner. As he is unknown to the customers of the firm, is never held out to them as a partner, and credit is never extended to the firm upon the faith of his personal responsibility; therefore, when he retires from the firm no obligation rests upon him or upon the other partners to give notice of his retirement. The same basis of reasoning makes even a dormant partner liable to such of the previous customers of the firm as had notice of his being a partner, provided they did not receive notice of his retirement.

Many cases involving this question have been examined and one has been found in Pennsylvania which holds the retiring partners liable, irrespective of the fact that the customer ever knew of their being members of the firm. *Shamburg v. Ruggles*, 83 Pa. St. 148. But we are not disposed to follow that case. We rather incline to hold, with the supreme court of Vermont, that the right of the customer to hold the retiring partners rests upon three grounds: (1) That such customer knew at the time when the contract was made that the partners whom he seeks to hold had been in partnership. (2) That he was ignorant of their dissolution. (3) That he made the contract supposing that he was contracting with all of them as partners and in reliance on their joint liability.

We are confirmed in this view by the recent unanimous decision of the supreme court of the United States, in *Thompson v. First National Bank*. 111 U. S. 529.

In this case it was held, reversing the court below, that in order to make a person liable as a partner, on the ground that he has, with his knowledge and consent, been held out as such by others, it must appear that the plaintiff gave credit upon the belief that he was a partner. The opinion of the court was delivered by Mr. Justice Gray, and is characterized by the exhaustive research which is his habit. He shows from numerous authorities that from an early day, with scarcely an interruption, this has been the principle upon which the English judges have proceeded; and he concludes that the rule·is merely a branch of the doctrine of equitable estoppel, which precludes a person from denying a state of facts after tacitly allowing another person to act upon the belief of the existence of the same, when to do so would be to work a fraud upon the other party. It is true that this was not a case where the person sought to be charged had ever, in fact, been a member of the partnership; but there can be no difference in principle between the case of one who, with his knowledge and consent, is held out as a partner, never having been such, and one who, with his knowledge and consent, is so held out after having ceased to be such.

The decisions of our supreme court upon the subject contain expressions sufficiently definite to show that this is the ground upon which that court has proceeded in applying the rule. "The object of giving notice," said Scott, J., speaking upon this subject, "is to *remove the impression* which has been created in the minds of those who have dealt with or had knowledge of the firm, that certain persons continue to compose it." *Pope v. Risley*, 23 Mo. 185, 187. Of course, then, the notice would be nugatory in respect of a person who never had such an impression. In a later expression of our supreme court on the subject, it is said by Sherwood, J., after repeating substantially the above language of Judge Scott: "Now, so far as mere strangers are concerned, it is obvious that no such impression can exist, and that they

can not be said to *give credit* or to *place reliance* on a partner *of whom they are ignorant.* If, however, a former partner wilfully suffers his name to appear as still belonging to the firm from which he has retired, as, for instance, in the title of the firm over the door of the shop or store, he will be held liable to any one who, by his misconduct in this particular, has been *misled into giving credit* to the firm of which he is an ostensible member." *Dowzelot v. Rawlings*, 58 Mo. 76.

We are aware of the fact that cases may be found which seem to imply that where a person has dealt with the firm he must have notice of its dissolution or he can. hold all the partners to a contract made in the firm name, without reference to the question whether he ever knew the actual partners who composed it, or gave credit on the faith of their being such. *Ketchum v. Clark*, Johns. 144; *Graves v. Merry*, 6 Cow. 701; *Deering v. Flanders*, 49 N. H. 225. And it is laid down in this state, in a late case, that, when partners have dealt as such with a seller, and, after being incorporated, continue to deal as before, having their bills made in the same way, without giving notice of their altered condition, they will continue to be liable as partners, unless the seller have knowledge thereof derived from some other source. *Martin v. Fewell*, 79 Mo. 401, 412. But it is apprehended that these cases assume, without stating, what we regard as one of the elements of the rule which holds a retiring partner, namely, that the fact of his being such was known to the customer. In another class of cases, principally found in the old books, it seems to be assumed, where the notice of the retirement of a particular partner was not brought home to the dealer, that he gave credit on the faith of his continuing to be a partner without requiring proof of such fact.. This conclusion would in most cases be a fair conclusion of fact, to be drawn by the jury or the trier of the facts; and it is apprehended that the reason why the old cases seem to have dispensed with express proof of the point

lay in the fact that parties were not allowed to testify as witnesses, so that the vendor or party giving the credit could not state the belief or motive which operated upon his mind when he gave it. In such a state of the law of evidence, that fact was generally not susceptible of direct proof; and, therefore, the jury were allowed to infer it from the mere fact of prior knowledge of the partner being a member of the firm, the failure to communicate notice of his retiring, and the giving of the subsequent credit; and in this way the court seem in some cases to have drifted insensibly into the idea that it would be conclusively presumed that the credit was so given; and we find even modern cases which uphold this view. *Strecker v. Conn*, 90 Ind. 469; *Uhl v. Harvey*, 78 Ind. 26. But these cases seem to us merely to illustrate the truth that this rule, when applied within the reasons upon which it was originally founded, is one of obvious justice, but when those reasons are left out of view and departed from—when the rule is applied as a mere technical rule—it not unfrequently ceases to be a rule of justice and becomes a means of working injustice.

Such, we apprehend, would be the consequence of applying the rule to the facts disclosed by the evidence in this case. Under our law parties are competent as witnesses, and the state of mind under which a person acted may be given in evidence by him, whenever that becomes a material subject of inquiry. If the state of facts existed, upon which the law predicates the right of a person to recover from one who was not a partner in the firm at the time when he gave credit to it, and who derived no benefit whatever from the transaction, it is necessary for such person, in order to such a recovery, to show it; the burden is upon him. The plaintiff has failed to show such a state of facts in this case.

The substantial facts above recited stand undisputed upon the record. We may lay out of view any question relating to the propriety of the instructions given and

refused, and consider whether, upon the law as applied to these undisputed facts, the judgment ought to have been for the plaintiff or for the defendants, as against William M. Price and Leslie Marmaduke. We are of opinion that the judgment ought to have gone in favor of these defendants. The plaintiff testified as a witness. Neither his testimony nor any other testimony in the record discloses that he ever knew who originally, or at any time before this transaction, composed the firm of Price, Marmaduke & Company. There is, consequently, no evidence in the record that he ever gave credit, either in the transaction of June, 1882, or in the transactions in controversy, to the firm or to the supposed firm, upon the faith of any one of these defendants being liable. This being so, he suffered no prejudice from any failure to communicate notice to him of the dissolution, by the retiring partners, prior to the transaction in controversy. If the retiring partners, in failing to communicate notice to him of their retirement, failed in the discharge of a duty to him, as he was not injured by it, it gives him no right of action against them for a debt which was not incurred by them or on their behalf. It is a case of *damnum absque injuria.*

II. We are further of opinion that the rule does not extend so far as to make the retiring partners liable for failure to give notice to one who was not either a *regular or a recent* customer of the firm, but who had had but one isolated transaction with the firm, and that three years before. We can find no case where, upon the facts disclosed, the rule has been carried so far. If we could extend the rule back to a person who had had an isolated transaction with the firm three years before, we do not see where the courts could consistently place a limit to it. In the case of a partnership which had been in existence many years, it would place the retiring partners under the onerous liability of communicating, at their peril, notice to every person who, during the existence of the firm, had had an isolated transaction on

credit with it, or else of answering personally for any subsequent credit transaction which he might have with the remaining partners. This would turn the rule from a rule of justice into a rule of palpable injustice.

The judgment will be reversed and the cause remanded. It is so ordered. All the judges concur.