FRANK H. GOODING AND SIDNEY S. ORMSBEE v. JOHN M. UNDERWOOD AND JAMES T GARDNER.

*Partnership—Acceptanee—Estoppel—Pleading.*

1. In a suit upon an acceptance of a bill of exchange on condition that the amount is found due the drawer on final settlement, the plaintiff must make proof of such settlement, and of the amount found due thereon, in order to recover.

2. An estoppel constitutes a distinct cause of action, and cannot be taken advantage of, either as a ground of recovery or as a defense, unless specially pleaded.

3. The object of a declaration is to give the defendant fair notice of the case he is called into court to meet; and a count charging a defendant with the acceptance of a bill of exchange cannot be held to inform him that he will be called upon to meet a liability on the ground of *estoppel;* citing *Cicotte v. Gagnier,* 2 Mich. 381; *Moran v. Palmer,* 13 Id. 367; *Connerton v. Millar,* 41 Id. 608.

4. It is the well-settled rule in regard to estoppels *in pais* that the conduct complained of must have induced another to act to his disadvantage, and that his situation in consequence thereof has changed; citing *Maxwell v. Bridge Co.,* 46 Mich. 282.

5. In a suit against a partnership upon an acceptance by one partner in his own name of a bill of exchange drawn on the firm, it is incumbent on the plaintiff to prove that the partner who signed his name did so for the firm, and that he was the lawful agent of his copartner for that purpose.

Error to Marquette. (Stone, J.) Argued November 18, 1891. Decided December 21, 1891.

*Assumpsit.* Defendants bring error. Reversed. The facts are stated in the opinion.

*F. O. Clark,* for appellants, contended for the doctrine of the opinion, and cited the authorities therein cited.

*Ball & Hanscom,* for plaintiffs, contended:

1. The charge of the court that if the jury found that the conversation which took place between Gooding and Underwood was as testified to by Mr. Gooding, and that Underwood intended thereby to give plaintiffs to understand that the condition of the account was such that that amount would be payable to them, and that they so understood it, then the doctrine of estoppel would apply, and plaintiffs would be entitled to a verdict, was correct, and in harmony with all the authorities applicable to the state of facts in this case; citing *Morrill v. Mackman,* 24 Mich. 379; 7 Amer. & Eng. Enc. Law, 19, 20; 2 Pom. Eq. Jur. §§ 880, 891; *Horn v. Cole,* 51 N. H. 287; *Cornish v. Abington,* 4 Hurl. & N. 549.

2. Expenditures in litigation may as reasonably constitute the basis of an estoppel as any other expenditures; citing *Meister v. Birney,* 24 Mich. 435; *Faxton v. Faxon,* 28 Id. 159; *Robb v. Shephard,* 50 Id. 189; *Dickerson v. Colgrove,* 100 U. S. 578.

GRANT, J. Plaintiffs brought suit against defendants on the following order:

"MARQUETTE, MICH., March 22, 1890.
"Messrs. UNDERWOOD & GARDNER,
"City.
"*Gentlemen:* Please pay to Gooding & Ormsbee, or order, $413.31, with interest at eight per cent. per annum, and charge same to our account.
"HETTING & BERGH."

This order was presented by plaintiffs to defendant Underwood, who indorsed it as follows:

"Accepted on conditions that the amount is due H. & B. on final settlement for contract work on Dead River Railroad.
"J. M. UNDERWOOD.
"March 26, 1890."

The declaration contains a special count setting forth

the substance of this order, and its acceptance by the defendants, and also the money counts. The plea was the general issue. The case was tried before the court with a jury, and verdict and judgment rendered for plaintiffs.

Upon the trial, Mr. Gooding, one of the plaintiffs, testified to a conversation with Mr. Underwood, the substance of which was as follows:

"I simply asked Mr. Underwood how much he would give us for the order. He said he didn't know that he could ever get anything on it, but he would give us $200. I thanked him, and told him we didn't care for it. I had conversation after that. He came in our store one evening with Mr. Charles Cummings, and bought something, I think. I couldn't give the date, but I think it was along about May sometime. He came in and bought something, and went out with Mr. Cummings, and pretty soon he came back, and says: 'That will be all right, Mr. Gooding; there is enough money coming to Hetting & Bergh to pay your claim, and your claim is first in;' and I think he said—now, I won't be positive about this—that the amount was credited to us and charged to Hetting & Bergh on his books; but he said, at any rate, there was money enough coming to them, and we would have the preference. That was before the commencement of this suit."

On cross-examination he testified that he did not know whether defendants had had a settlement with Hetting & Bergh; that Underwood did not tell him they had; that he did not know whether there was anything coming to Hetting & Bergh, nor whether this account was ever charged to them by defendants. This conversation was denied by Underwood, but the jury, in reply to a special question, settled that point in favor of the plaintiffs. It is this testimony, and the charge of the court thereon, which raise the principal question in the case.

The charge of the court was as follows:

"If you should find that Mr. Underwood, acting for

the defendants, said to the plaintiffs in the suit, 'There is enough coming to Hetting & Bergh to pay this order, and it will be all right, and you stand first in the matter,' or any words to that effect, thereby giving them to understand that the condition of the account was such that that amount would be payable to them, and indicating that they should so understand it, I think, gentlemen, that the defendants in this case are estopped from now setting up the contrary. To hold otherwise would be to allow parties to practice a fraud upon parties, induce them to believe that there was an amount due, and then, when action is brought upon it, permitting them to come in and dispute them."

1. The plaintiffs' evidence did not show that the amount of the order was due Hetting & Bergh upon a settlement. The testimony on the part of the defendants was that nothing was due. Admitting that Underwood had the power to bind the partnership of which he was a member, it is clear that no liability attached by reason of the acceptance, unless the amount was found to be due Hetting & Bergh upon final settlement. The contract was a conditional one, and upon its face plaintiffs could only recover by proof of a final settlement, and the amount found due thereon.

Undoubtedly, the jury based their verdict upon the ground of estoppel. The declaration is framed upon the basis of an absolute acceptance of the order. Plaintiffs will not be permitted to recover upon the ground of an estoppel which is not set up in the pleadings. The estoppel constitutes a distinct cause of action, and cannot be taken advantage of, either as a ground of recovery or a defense, unless pleaded. The object of the declaration is to give defendant fair notice of the case he is called into court to meet. A count charging him with the acceptance of a bill of exchange cannot be held to inform him that he will be called upon to meet a liability on the ground of estoppel. *Cicotte v. Gagnier*, 2

Mich. 381; *Moran v. Palmer,* 13 Id. 367; *Connerton v. Millar,* 41 Id. 608.

2. Defendants were copartners in a contract for the construction of a railroad. Hetting & Bergh took a sub-contract from them. There is no evidence in this record to show that this draft was presented in the due course of business. On the contrary, it is apparent that defendant Underwood accepted it for the accommodation of plaintiffs. There is also no evidence that such acceptances were within the scope of the partnership business, nor that Gardner had any knowledge of the transaction; or ever ratified it, nor that he ever knew of the conversation between Mr. Gooding and Mr. Underwood. It must, therefore, follow that the estoppel, if any there be, does not apply to Gardner. Whether Underwood intended to bind only himself or his firm is uncertain. It is certainly customary for one partner to sign the partnership name in such transactions. But it is unnecessary to consider the intention of Underwood. Plaintiffs, in order to recover, were bound to show that Underwood was acting within the scope of his authority when he made the representations to Mr. Gooding.

3. It is the well-settled rule in regard to estoppels *in pais* that the conduct complained of must have induced another to act to his disadvantage, and that his situation in consequence thereof has changed. This rule is well stated in *Maxwell v. Bay City Bridge Co.,* 46 Mich. 282. The transaction in the present case did not amount to a novation. Plaintiffs lost no opportunity for enforcing their claim against Hetting & Bergh, who, so far as this record shows, were responsible. It is urged by plaintiffs that this case falls within the rule of *Meister v. Birney,* 24 Mich. 435, wherein it was held that expenditures in litigation may as reasonably constitute the basis of an estoppel as any other expenditures. The reply to this is

that the record does not disclose that plaintiffs brought this suit in reliance upon the statement of Mr. Underwood. As already shown, the declaration is framed upon a contrary theory, viz., the performance of the condition expressed in the acceptance. The proof is not sufficient in this regard to justify a recovery upon the ground of estoppel.

4. The statutes of this State (How. Stat. § 1583) provide that—.

"No person within this State shall be charged as an acceptor on a bill of exchange, unless his acceptance shall be in writing, signed by himself or his lawful agent."

It was incumbent upon the plaintiffs to prove, not only that Underwood, in signing his own name, did so for the firm, but also that he was the lawful agent of Mr. Gardner for that purpose. These things cannot be presumed from the mere fact of the existence of a partnership.

Judgment reversed, and a new trial ordered.

The other Justices concurred.