MEYER HOMBERGER AND MORRIS KOENIGS-
BERGER, COPARTNERS AS M. HOMBERGER &
CO., RESPONDENTS, *v.* DANIEL ALEXANDER AND
JULIA ALEXANDER, COPARTNERS AS DANIEL
ALEXANDER & CO., DEFENDANTS, JULIA ALEX-
ANDER, APPELLANT.

1. DEPOSITIONS.— STIPULATION.—WAIVER.—A stipulation to take
depositions in a foreign state before a certain notary public
providing that when the depositions are taken they may be
read and used in evidence on the trial, and that all objections
to the form of taking them are waived, reserving the right to
object to any and all questions and answers on the ground of
irrelevancy, incompetency or immateriality covers the objection
that they were taken before a notary public instead of before
a commissioner, for the reason that the stipulation was suffi-
ciently comprehensive to include the waiver of a commission.

2. ID.—ID.—CERTIFICATE OF OFFICER.— SUFFICIENCY.—CONSTRUC-
TION OF STIPULATION.—The certificate of the notary public
before whom depositions were taken on stipulation certified
that " the witnesses appeared in person before me and answered
the interrogatories and cross interrogatories herein, as appears
by the duly signed and sworn-to depositions hereunto annexed,"
without stating whether the depositions were sworn to before
or after the answers were written, or that the oath required
by statute was administered to the witnesses, or that their
answers were read over to them before signing, or showing in
any way with certainty that the commissioner performed his
official duty is insufficient.

3. PLEADING.—DISSOLUTION OF FIRM.—NOTICE.—ESTOPPEL.—A. &
Co., a firm of merchants in Salt Lake City had a running
account with H. & Co., a firm of merchants in New York.
In December, 1891, A. & Co., executed a firm note to H. &
Co., for balance due on account, which was renewed in April,
1892, and in August, 1892, the note in suit was executed in
the firm name; in May, 1892, the firm of A. & Co., was dis-
solved and appellant retired, but A. continued the business

under the old name.   H. & Co. sued upon the note alleging that it was executed by the defendants as copartners, "as they are informed and believe." Plaintiffs offered proof of the above facts and also that they did not know of the dissolution of the firm until October, 1892, after the note was given. This evidence was objected to on the ground of irrelevancy and immateriality, in that it tended to prove a cause of action against the appellant other than that stated in the complaint, which objection the court overruled. *Held, error*, inasmuch as the evidence tended to prove a cause of action founded upon an estoppel *in pais*, which plaintiffs had failed to specially plead, and for that reason the evidence offered was variant from the allegation of copartnership at the time the note was executed.

4. DISSOLUTION OF FIRM. — EVIDENCE. — NOTICE.— Evidence that plaintiffs were subscribers to and received commercial reports which reported the dissolution of the defendant firm, is competent as tending to show knowledge of the dissolution.

(No. 553.   Decided July 27, 1895.   40 P. R. 260.)

APPEAL from the District Court of the Third Judicial District.   Hon. Samuel A. Merritt, *Judge.*

Action by Meyer Homberger and Morris Koenigsberger, copartners as M. Homberger & Co., against Daniel Alexander and Julia Alexander, copartners as Daniel Alexander & Co.   From a verdict for plaintiff, Julia Alexander appeals. *Reversed.*

*Mr. C. S. Varian, Messrs. Brown & Henderson,* for appellant.

The statute authorizes the taking of depositions out of the state upon commission.   It permits the parties to select the commissioner, but delegates no other authority to them.   It requires the commission to authorize the administering of the oath and to take the deposition and certify the same.   2 Comp. Laws, 1888, §§ 3944-5-6.   A

stipulation that depositions might be taken before a certain notary in New York is not a waiver of the issuing of a commission. *Ragan* v. *Cargill,* 24 Miss. 540; *Boggs* v. *State,* 8 Ind. 463; *Unis* v. *Admsts.,* 12 Gratt. 484. The certificate is fatally defective. It does not show whether the depositions were reduced to writing before or after the witnesses were sworn. Weeks Depositions, § 497; *Stonebreaker* v. *Short,* 8 Pa. 145. The general rule is—although our statute does not in terms require it—that the witness should be sworn in the same way he would be sworn if present at the trial, *i. e.,* to state the truth, the whole truth and nothing but the truth. Weeks, § 497; 8 Pa. 155; Id. § 3; *Amory* v. *Fellows,* 5 Mass. 226. The note in suit was a new contract, made after the dissolution of the firm. Daniel Alexander had no authority to bind the retiring partner by a new contract. As said by Justice Story, his authority could "extend no further than to settle the partnership concerns already existing." *Bell* v. *Morrison,* 1 Pet. 371; *Bank* v. *Humphreys,* 1 McCord, 388; *Lockwood* v. *Comstock,* 4 McLean, 383; Rand Com. Paper, vol. 1, § 432; Daniels Neg. Inst. vol. 1, § 370; *Morrison* v. *Perry,* 11 Hun, 36; *Palmer* v. *Dodge,* 4 Ohio St. 21.

The firm having been dissolved at the time the note in suit was given, if appellant is liable, it is on the ground of estoppel; in fact, she did not make the note, but is held to plaintiffs because, being actually a partner, and known to plaintiffs as such at a prior time, she neglected to give them notice of the dissolution. Here is clearly a liability on the ground of estoppel *in pais.* Bigelow on Estoppel, 4 ed. p. 535. The rule is settled that estoppels must be especially pleaded. Bliss Code Pleading, § 364. Here the plaintiffs were permitted to give evidence of and recover on the ground of estoppel without any intimation given in the complaint. This was error. *Rail* v. *Bank,*

22 S. W. 865; *Goodwig* v. *Underwood,* 50 N. W. 819; *Insurance Co.* v. *Johnson,* 27 Pac. 101–2.

*Messrs. Dey & Street,* for respondents.

The law has long been settled that a retiring, ostensible or known partner will continue liable to former dealers for the firm's subsequent obligations until such previous dealers have actual notice of the dissolution derived from some source, no matter what. 17 Am. & Eng. Enc. of Law, p. 1117, and cases cited; 2 Bates on Part. § 606; *Vernon* v. *The Manhattan Co.,* 22 Wend. 183, 195. The retiring partner can always relieve himself from the liability existing between copartners by which one may bind the other within the scope of their business, in their future transactions with those who have dealt with them as partners, by seeing that the prior dealers have actual notice of the dissolution. 17 Am. & Eng. Enc. of Law, pp. 1120–22, and cases cited; 2 Bates on Part. § 612, and notes; Leading Art. 26 Cent. Law J. 567; 1 Lind, on Part. § 404, 406. As respondents had long previous dealings with appellant's firm, it is clear that in order to relieve Julia from liability on the note sued on herein, not only must there have been a prior dissolution of the firm of D. Alexander & Co., but M. Homberger & Co. must have been in some manner and from some source actually informed thereof. 2 Bates on Part. § 607. "The reason why a notice of dissolution is necessary is the same as in cases of revocation of other agencies, and is variously stated as arising from a species of estoppel to deny continuance of the agency, or on the ground of negligence, whereby credit is given, or from the presumption of a continuance of a state of affairs giving a person who once knows of the existence of a firm the right to assume it remains the same; or, it may be stated that until proper notice of dis-

solution, the partner's attitude is analogous to that of a partner holding out."

It was proper to declare on the note and allege partnership of the defendants, and it is well settled that a note made by one partner after dissolution, of which no notice was given or knowledge had, is the same as if given before dissolution. *Lovejoy* v. *Spafford*, 93 U. S. 430; 2 Bates on Part. § 607; *Jausen* v. *Grinshaw*, 26 Ill. App. 287; *Clement* v. *Clement*, 69 Wis. 599; *Sibley* v. *Parsons*, 53 N. W. R. 786 (Mich.) And the answer denying partnership puts in issue the question of dissolution and notice. *Whiteside* v. *Lee*, 2 Ill. 548; *Washburn* v. *Walworth*, 133 Mass. 499. Daniels on Neg. Inst. vol. 1 , § 75, says: "Notwithstanding the dissolution of the firm, the use of the firm's name by one partner will bind all, unless due notice of the dissolution were given so as to affect the holder of the paper with its infirmities." And see cases cited in note. 1 Rand. on Com. Paper, § 432, also cited by appellants, makes this express exception: "But to discharge the firm's liability for a debt secured by its note, which had been renewed by one partner after the dissolution of the firm, the holder must have had notice of such dissolution before taking the renewal, etc.," and cases cited. Objections are made to the depositions read; *First*, because no commission was issued; and, *Second*, because of informalities in the certificate of the notary. These objections, if they had any force, came too late; such objections must be made by motion to suppress before the trial is proceeded with. This was settled in the recent cases of *Am. Pub. Co.* v. *Mayne*, 9 Utah, 318; *Howard* v. *Stilwell*, 139 U. S. 109–205. Moreover, the deposition was taken pursuant to a written stipulation by which "All objections to form of taking the deposition were waived" and the certificate shows that the deposition was taken before the proper notary and duly signed and

sworn to. Every page was signed by the notary and his seal affixed thereto. Beyond question, the objection was untenable. Weeks Law of Dep. §§ 438, 435; *Day* v. *Raquet,* 14 Minn. 273; *Malm* v. *Barton,* 27 Minn. 530; *Palmer* v. *U. Mining Co.,* 70 Cal. 614; *People* v. *Grundell,* 75 Cal. 301; *Blackie* v. *Cooney,* 8 Nev. 41–48; Com. L. § 3946, p. 445.

SMITH, J.:

This action was brought in the Third District Court by plaintiffs against the defendants as copartners upon a promissory note dated August 4, 1892, for $1,200, signed, "D. Alexander & Co." The complaint charges that the defendants were copartners at the time of the making of the note, and that they as such made, executed, and delivered the same to plaintiffs. No defense was made by D. Alexander, but Julia Alexander filed an answer, denying that she was a copartner with D. Alexander at the time the note was made, and denied that she and D. Alexander, as copartners or otherwise, executed or delivered the note. The trial was had in the district court upon the complaint and this answer of Julia Alexander. Trial was had before a jury. Verdict and judgment for plaintiffs. Motion for new trial was overruled, and the appeal is by Julia Alexander. On the trial the plaintiffs offered in evidence the depositions of the two members of the plaintiffs' firm, and of the firm book-keeper, which were taken upon the following stipulations: "It is hereby stipulated and agreed that the depositions of Meyer Homberger, Morris Koenigsberger, and Isaac Speien may be taken in the above-entitled cause on the part of the plaintiffs, before George Einstein, a notary public in the city of New York, state of New York, and that when so taken the depositions may be read and used in evidence on the trial of said cause on the part of the plaintiffs.

It is expressly agreed and stipulated that all objections to the form of taking said depositions are hereby waived; that each party reserves the right to object to any and all questions and answers on the ground of irrelevancy, incompetency, or immateriality, and to each of said depositions on any other competent ground; and such depositions, when taken, shall be forwarded by the officer taking the same to the clerk of said court at Salt Lake City, Utah." Each page of the answers to the interrogatories contained the name and notarial seal of the notary. Each of the depositions was signed by the witness, and a jurat attached, as follows: "Sworn to before me, this 8th day of March, 1894. George Einstein, Notary Public."

The certificate of the notary was in the following language: "City and County of New York—ss: I, George Einstein, do hereby certify that I am a resident of the city of New York, and a duly-qualified notary public in and for the city and county of New York, of the state of New York. Meyer Homberger, Morris Koenigsberger, and Isaac Speien appeared in person before me, and answered the interrogatories and cross interrogatories herein, as appears by the duly signed and sworn-to depositions hereto annexed. Dated New York, March 8th, 1894. George Einstein. [Seal.]"

A motion to suppress the depositions having been seasonably made before trial, and overruled, the objections were renewed at the trial on the following grounds: That the certificate was insufficient, in not stating that the witnesses had subscribed the depositions in the presence of the notary, nor that their respective answers were read over to them, and by them declared correct, nor that the answers returned were the true answers of the witness. The objections were overruled, and this ruling, by appropriate assignment, is first presented for our consideration.

24

It is urged by appellant that, without a waiver, depositions cannot be taken except before a commissioner, and that the stipulation in this case was not broad enough to include such waiver, and can only be construed to be an agreement designating the commissioner to whom a commission may issue. In this we cannot concur with counsel for appellant. The stipulation, waiving all objections to the form of taking the depositions, is, in our judgment, sufficiently comprehensive to include a waiver of the issuing a commission. The objection to the certificate, however, presents a more serious question. The use of depositions in actions at law is in derogation of the common law, and the statutory authority, therefore, must be strictly pursued. The language of the statute is general, and only in terms requires the commissioner to administer an oath to the witness, and "take his deposition," and to certify the same to the court. 2 Comp. Laws, § 3946. Elsewhere in the statute the form of oaths in actions is prescribed, requiring a witness to swear that his evidence "shall be the truth, the whole truth, and nothing but the truth." A reasonable construction of the statute would seem to require the administration of an oath substantially as above to the witness before his examination, or reduction thereof to writing, and that the deposition should be read over to the witness before signing, or, at least, opportunity afforded him for the correction of his testimony, if desired. This much, at least, is necessary for the protection of litigants and the courts, and we think that the statute must be so read in the light of the general rules governing the subject. In *Amory* v. *Fellowes*, 5 Mass. 266, it is said: "The testimony of witnesses, whether *viva voce* or in writing, cannot be admitted in evidence unless there is regular evidence that it was given on oath duly administered." And it is stated as a general rule

that the certificate should state that the deposition was read to the witness before signing. Weeks, Dep. § 328. That same author states that a deposition reduced to writing before the witness is sworn, or in the absence of the commissioner, is inadmissible. Id. §§ 312–497. See, also, *Stonebreaker* v. *Short,* 8 Pa. St. 157. It is imperative that the certificate of the officer should prove the essentials in the taking of the deposition. The certificate is an official document, and ought to be in such form as to exclude doubt. The manner of executing the commission ought not to be left to inference, but should be plainly and explicitly stated. Weeks, Dep. § 328.

Tested by these rules, we are of the opinion that the certificate in this case was insufficient. The statement is that witness "appeared in person before me, and answered the interrogatories and cross interrogatories herein, as appears by the duly signed and sworn to depositions hereto annexed"; but it does not appear whether the depositions were signed and sworn to before or after the answers were written. For all that appears, they may have been written out in the absence of the notary, and before the administering of the oath; in other words, that they are simply affidavits. Nor are we advised by the certificate that the oath required by the statute was administered.

Passing all these, however, the insuperable objection to the certificate is that it states nothing with certainty. The fact that the witnesses appeared and answered is made to depend upon the depositions themselves, to which reference is made for proof of a performance of the official duty of the commissioner. Since the certificate does not state the facts, and the stipulation presents no waiver, we hold the objections to the admission of the depositions on this ground to be well founded, and that the court erred in overruling the same.

It was disclosed by the depositions that the plaintiffs

had had dealings with the firm of D. Alexander & Co.,. composed of Daniel and Julia Alexander, commencing in August, 1890, and thereafter a running account was maintained until December, 1891, when the firm executed a note to plaintiffs; that this note was renewed in April, 1892, and in August, 1892, the note in question was given; that plaintiffs did not know of the dissolution of the Alexander firm until October, 1892, and after the note was given. The defendant Julia Alexander objected to all of this evidence on the ground of irrelevancy and immateriality, because it tended to prove a cause of action against her, other than that stated in the complaint; that is, a cause of action founded upon an estoppel *in pais.* The court overruled the objection, and this ruling is also assigned as error.

As before stated, the complaint charged the defendants,. Julia and Daniel Alexander, with making the note in suit as copartners. No other ground of liability was stated.. The evidence offered and admitted tended to charge Julia Alexander with liability on the note, because the plaintiffs had no notice of the dissolution of the firm, which they were entitled to, as persons having had previous dealings. with the copartnership. We are clearly of the opinion that the evidence tended to establish an estoppel *in pais.* The doctrine has well been referred to estoppel *in pais,*. "that where one intentionally or negligently holds himself out or permits another to hold him out as a partner of a firm,. or when late partners continue to do business in the firm name after dissolution, and the representation has been innocently acted upon by others without the knowledge or notice of the truth of the matter, such party or parties. will be held liable to such persons." Bigelow, Estop. (4th ed.) 535. The question presented is one of pleading and proof. The defendant Julia is charged as an actual partner with actually making the note. A verdict is rendered

against her upon proof of a different state of facts. She is held because notice of the dissolution did not reach the plaintiffs, and an estoppel thereby created. It is insisted by appellant that the facts constituting the estoppel upon which plaintiffs relied for a recovery should have been pleaded, and that the evidence offered was variant from the allegation of partnership at the time the note was executed. We think the contention is well founded. Under the Code, plaintiff is required to state the facts constituting the cause of action in ordinary and concise language. If the cause of action is based upon an estoppel *in pais*, it is necessary that the facts constituting the estoppel should be pleaded. The rule is elementary. Bliss, Code Pl. § 364.

In *Rail* v. *Bank* (Tex. Civ. App.), 22 S. W. 865, action was brought against the bank upon a contract alleged to have been made through the bank's authorized agent. It was argued on appeal that the court should have charged the jury that, if the bank held out the alleged agent as having authority, it would be liable, but the Texas court of civil appeals said: "No such state of case was set up in his pleadings. * * * We understand the rule in this state to be that an estoppel, which is the principle involved, to be available, must be alleged." So in Michigan, in an action upon an acceptance, a recovery was suffered upon an estoppel arising from conduct. In reversing the case the court say: "Undoubtedly the jury based their verdict upon the ground of estoppel. The declaration is framed upon the basis of an absolute acceptance of the order. Plaintiff will not be permitted to recover upon the ground of an estoppel which is not set up in the pleadings. The estoppel constitutes a distinct cause of action, and cannot be taken advantage of, either as a ground of recovery or a defense, unless pleaded. The object of the declaration is to give the defendant fair notice of the case he is called into court to meet. A count charging him

with the acceptance of a bill of exchange cannot be held to inform him that he will be called upon to meet a liability on the ground of estoppel." *Gooding* v. *Underwood,* 89 Mich. 187, 50 N. W. 818. These observations, in which we fully concur, are specially applicable here. Julia Alexander was charged upon a note which it was alleged she actually executed as a partner with Daniel. She was held in the verdict upon an estoppel raised against her the first time in the evidence. The injustice is so apparent that no further discussion is necessary.

We think the court erred in admitting the testimony. The testimony in the trial disclosed the fact that the defendants were husband and wife; that they had been copartners in the business several years, commencing in 1886, under the firm name of D. Alexander & Co., and had from time to time purchased goods from the plaintiffs. Defendant Daniel Alexander testified that the firm was dissolved May 12, 1892, he continuing the business alone, under the same name, and assuming the indebtedness; that a written notice of dissolution was made, and signed by them, which was produced and put in evidence; that it was published in the Salt Lake Daily Tribune and Herald. Copies of these papers of the issue of May 13, 1892, were produced and put in evidence, showing the publication. He further testified that he mailed a copy of the Tribune of that date containing the notice to all his creditors, including plaintiffs, and that the notice was marked with blue pencil; that shortly after giving the note in question, and about August 24, 1892, he went to New York, and saw one of the plaintiffs, to wit, Meyer Homberger, and had a conversation with him, in which Homberger admitted receiving the paper, with the notice of the dissolution, and admitted that he knew of the dissolution, and knew that Mrs. Alexander was not a party to the note. He further testified that, for three years prior

to giving the note, he was in the habit of going to New York twice a year, and remaining for some time, and was there some time in the spring before the note was given; that all the time while in New York he made plaintiffs' office his headquarters. Meyer Homberger, Morris Koenigsberger, two of the plaintiffs, and Isaac Speien, on behalf of plaintiffs, testified that plaintiffs were subscribers to Bradstreet's Commercial Agency from May to August, 1892, and that they received two books a year from said agency, but did not receive daily reports of the financial standing and changes in the firms and business houses having dealings with them, and that they did not receive the marked copy of the Tribune containing the notice of dissolution, and that they did not know of it at the time the note was given. Meyer Homberger denied the conversation in New York testified to by Daniel Alexander.

Harold Pitt, on behalf of defendants, testified that he was manager at Salt Lake City for Bradstreet's Commercial Agency; that he knew of the practice of said agency at all its offices; that he saw the notice of dissolution published in the Salt Lake paper on May 13, 1892, and notified the general office in New York City by sending them a copy of it. He further testified that it was the custom of the agency at New York, when it received notice of any business change, to issue daily sheets showing the changes, and that these were furnished to every subscriber, whether they were subscribers for one or two books. He produced and identified the books of the agency issued in March and July, 1892, being general revisions for the entire United States. In the book for March he identified the report on D. Alexander & Co., showing it a copartnership, and in the July book it was reported as D. Alexander being the sole proprietor. In this state of the evidence, defendants offered in evidence

the entries in the two books above referred to, and they were rejected by the court; and also offered to show by D. Alexander that on the various occasions when he was in New York, both before and after the giving of the note, the daily reports of both commercial agencies, Dun's and Bradstreet's, were daily brought to the office of the plaintiffs, and that Meyer Homberger was in the habit of examining them. Various questions were put to the witness tending to elicit, and the offer was made to show it, but they were all objected to by the plaintiffs and excluded by the court. These rulings are assigned as error.

The ruling rejecting the entries in the book raises the question as to whether, when it is shown that the party sought to be notified is a subscriber to a publication, it is competent to show that notice of the dissolution was published in it. It is undoubtedly true that, as to parties who have had prior dealings with the firm, actual notice must be shown before they are charged with it. This is not denied by appellant, but this rule refers to the *quantum* of proof, and not to the manner of proving it. A person on trial for a crime must be shown to have actually committed the act charged, but it may be shown by circumstantial evidence, by showing circumstances from which it may be fairly presumed beyond a reasonable doubt. 1 Whart. Ev. § 675, says: "But it will be enough to enable the newspaper to go to the jury to prove that it was taken by the party on whom it was sought to prove notice, or that he habitually attended a reading room where it was, or was shown in some other way to have been furnished with the paper, or that the newspaper is one with which it is his duty to be familiar." And in Wade on the Law of Notice (section 506) the author says: "There seems to be no doubt that the mere fact that the prior dealer subscribes for and reads the paper containing the notice will not raise the legal inference of actual notice; and although it

would not be proper to reject evidence of such publication, and the taking and reading of the paper by the dealer, still the jury could be instructed that the mere taking of the paper was not of itself actual notice." See, also, *Treadwell* v. *Wells*, 4 Cal. 260; 2 Bates, Partn. § 617; *Young* v. *Tibbitts*, 32 Wis. 79; *Lovejoy* v. *Spafford*, 93 U. S. 430.

In excluding this testimony we think the court erred. The burden of proving the notice was upon the defendant. Plaintiff Homberger denied the conversation with Alexander in New York, as testified to by him. It was the testimony of one person against another. Publication at Salt Lake was shown, but plaintiffs might not see this. They denied receiving the paper claimed to have been sent them. It was impossible to show its receipt by direct testimony. The only publication with which plaintiffs were shown to be connected was rejected. We also think the court erred in rejecting the testimony offered from Daniel Alexander. It directly contradicted the testimony of plaintiffs and Speien that they did not receive the daily reports. The testimony of Pitt tended to show that the notice of dissolution was published in these reports. The judgment should be reversed, and a new trial granted.

BARTCH and KING, JJ., concur.