## 10991

### SIMMEL v. WILSON *ET AL.*

(113 S. E., 487)

1. PARTNERSHIP—WHETHER FIRM WAS DISSOLVED, AND PLAINTIFF, SUING PARTNERS, HAD ACTUAL NOTICE THEREOF BEFORE CONTRACTING LITIGATED CLAIM, HELD FOR JURY.—In an action against partners after dissolution whether the partnership was dissolved, and plaintiff had actual notice thereof before contracting the litigated claim, *held* for the jury.

NOTE: On necessity of actual notice of retirement of member of firm to relieve retiring member from obligation renewed after retirement, see note in 4 L. R. A. (N. S.), 800.

2. PARTNERSHIP—RULE REQUIRING NOTICE OF DISSOLUTION TO RELIEVE
A RETIRING PARTNER FROM FUTURE DEBTS CONTRACTED IN FIRM
NAME BASED ON EQUITABLE ESTOPPEL.—The rule requiring notice of
dissolution and withdrawal of a partner to relieve a retiring partner
from liability for future debts contracted in the name of the firm is a
branch of the doctrine of equitable estoppel, precluding a person
from denying a state of facts which he has permitted another to
believe continues to exist, when to do so would work a fraud on
the other party.

3. PARTNERSHIP—CREDITORS WHO HAVE DEALT WITH FIRM ENTITLED
TO NOTICE OF DISSOLUTION; FROM WHICH NOTICE INFORMATION OF
DISSOLUTION MAY BE INFERRED, STATED.—Persons who have dealt
with a firm are entitled to notice of dissolution, and that they
received such information may be inferred from a notice in the
public prints, and from any other pertinent facts and circumstances;
but the insertion of such a newspaper notice to such persons is
not of itself sufficient.

4. PARTNERSHIP—PERSONS WHO HAVE NOT DEALT WITH FIRM, BUT
KNOW OF ITS EXISTENCE, ENTITLED ONLY TO GENERAL NOTICE OF
DISSOLUTION AS DEFINITE AS NOTICE OF FIRM'S EXISTENCE.—Persons
who have not dealt with the partnership prior to dissolution, but
who have knowledge of it, are entitled to as definite a notice of
the dissolution as they had of its existence, and a newspaper
notice is sufficient, but not an exclusive test of compliance with
the obligation to give general notice.

5. PARTNERSHIP—PERSONS WHO NEVER DEALT WITH OR HAD KNOWL-
EDGE OF PARTNERSHIP HELD NOT ENTITLED TO NOTICE OF DISSOLU-
TION.—A person who never dealt with or had actual knowledge
of a partnership until the contracting of the litigated claim, in the
absence of a showing that he was misled to his injury, was not enti-
tled to any notice of a prior dissolution.

Before TOWNSEND, J., Charleston. October 1921. Re-
versed and remanded.

Action by Louis C. Simmel, doing business as Louis C.
Simmel & Co., against H. G. and H. W. Wilson. From
directed verdict for plaintiff, the defendant H. W. Wilson
appeals.

*Mr. Wm. Anderson Clarkson,* for appellant, cites: *Only*
*evidence was as to dissolution and Court should have so*
*held:* 111 S. E., 14; 79 S. C., 338. *Dissolution may be by*
*parol:* 2 Rich. L.; 351. *Plaintiff extended no credit on*

*strength of H. W. Wilson, had no knowledge of partnership, and not entitled to notice of dissolution:* 13 S. E., 955; 54 N. W., 738; 30 S. W., 491; 10 Mich., 35; 24 Mo. App., 19; 153 N. W., 522. *Person presumed to know what inquiry would have shown where he has facts sufficient to put him on inquiry:* 111 S. C., 330; 2 McC., 379; 89 S. C., 453.

*Messrs. Whaley, Barnwell & Grimball,* for respondent, cite: *Liability of partners after dissolution:* 168 Fed., 187; 30 Cyc., 403; 3 Rich., 369; 22 S. C., 304; 45 S. C., 216. *Notice of dissolution required:* 22 A. and E. Enc., L., 177, 180; 1 McC., 16; 3 Rich., 369; 30 Stat., 879. *Partners liable, whether creditors knew of partnership or not:* 75 S. C., 110.

August 19, 1922.

The opinion of the Court was delivered by MR. JUSTICE MARION.

Action by Louis C. Simmel, doing business as. Louis C. Simmel & Co., plaintiff, against H. G. Wilson and H. W. Wilson, as co-partners under the firm name of Wilson & Wilson, defendants. From judgment on verdict for the plaintiff, directed by the Circuit Judge, the defendant H. W. Wilson appeals.

Stated from the standpoint of the appellant the evidence tended to establish the following facts: In March, 1917, H. G. Wilson and H. W. Wilson, defendant-appellant, formed a partnership to do a brokerage business in the City of Charleston, S. C. War was declared in April, 1917, and on or about the 2d or 3d day of July, 1917, the firm was dissolved; H. W. Wilson selling out his interest to H. G. Wilson and enlisting in the service of the United States. The mercantile agencies and the Bank of Charleston were notified of the dissolution, but no notice was published in the newspaper. The title of the old firm was

"Wilson & Wilson," and a letterhead with this title in the middle and the names of the individual partners, H. G. Wilson and H. W. Wilson, in the upper right and left hand corners, respectively, was used by the firm. After the dissolution of the firm in July, 1917, H. G. Wilson continued the brokerage business under the name of "Wilson & Wilson," discontinuing the use of the above letterhead, and using in place thereof a letterhead with the names of the original partners omitted, with the title "Wilson & Wilson" in the middle, and just below, to the left of the center of the letterhead, the words "H. G. Wilson." This last letterhead was used from about August, 1917, until H. G. Wilson went out of business the latter part of 1919, or the first part of 1920, and was received by the plaintiff-respondent.

In October, 1918, a year and four months after the dissolution of the original firm of Wilson & Wilson, the plaintiff-respondent, Simmel & Co., of San Francisco, Cal., without any investigation, without knowledge whether he was dealing with an individual, a partnership or a corporation, and without knowing that there was any such person as H. W. Wilson, sold "Wilson & Wilson, H. G. Wilson," a shipment of tomatoes, order notify bill of lading, draft attached. The shipment reached Charleston about the 1st of December, 1918. H. G. Wilson was not able to take up the draft, and finally the First National Bank, to whom the draft had been sent, on instructions from Simmel & Co. took the shipment out of the depot and sold it. To recover the net loss entailed Simmel & Co. brought this action, joining H. W. Wilson, and alleging that he was a member of the firm of Wilson & Wilson. The defense of H. W. Wilson was that he was not a partner at the time of the transaction, and had not been one since July, 1917. At the close of the testimony, both the plaintiff and the defendant H. W. Wilson made motions for directed verdicts. The Court refused the motion of the defendant-appellant,

H. W. Wilson, and granted the motion of the plaintiff-respondent. From these rulings of the trial Court this appeal is taken.

The first and second exceptions assign error in the refusal of the presiding Judge to grant the motion of the defendant, H. W. Wilson, for the direction of a verdict. These exceptions must be overruled. We do not think the trial Judge could properly have held that the evidence was susceptible of no other reasonable inference than that the co-partnership of the defendants had been actually dissolved in July, 1917, that the defendant, H. W. Wilson, was not a member of such copartnership in October, 1918, and that the plaintiff had actual notice that H. G. Wilson was the sole member of the firm of Wilson and Wilson at the time of the transaction here involved. Those facts were not admitted by the plaintiff, and, in any view of the law of the case, it was for the jury to draw the inference essential to the determination of those questions from all the facts and circumstances adduced in evidence.

But the third exception, assigning error in granting plaintiff's motion for a directed verdict as against the defendant, H. W. Wilson must be sustained. The Circuit Judge's view of the law was that, where a partnership is admitted to have been in existence, a retiring partner remains liable for all debts subsequently contracted in the firm name, unless he has given general public notice of the dissolution of the partnership and of his withdrawal. Entertaining the opinion that there was no evidence tending to establish that there had been general public notice of the dissolution of the partnership, the trial Judge accordingly directed the verdict against the defendant, H. W. Wilson. The rule as to notice applied by the Circuit Court was too broadly laid down. That rule, correctly understood, is merely a branch of the doctrine of equitable estoppel, which precludes a person from denying

a state of facts which he has permitted another to believe continues to exist, when to do so would work a fraud upon the other party. *Thompson v. First Nat. Bank,* 111 U. S., 529, 4 Sup. Ct., 689; 28 L. Ed., 507; *Price v. Middleton,* 75 S. C., 110, 55 S. E., 156. Obviously, the object of giving notice is to remove the impression which has been created in the minds of those who have dealt with or had knowledge of the firm, that certain persons continue to compose it. *Pope v. Risley,* 23 Mo., 185.

It is very generally recognized that, with respect to their right to invoke the benefit of the doctrine of notice of dissolution, "men resolve themselves into two general classes, those who have had dealings with the firm, and those who have not." Those who have had dealings with the partnership, who are presumed to know who compose it, and to rely upon the credit of each and all of them, "are entitled to act upon that knowledge until they have been informed that the partnership no longer exists." That they have received that information may be inferred from a notice in the public prints, and from any other pertinent facts and circumstances. *Martin v. Walton,* 1 McCord, 16. But advertisement of dissolution in a newspaper is not of itself notice to persons who have had dealings with the firm. *White v. Murphy,* 3 Rich., 369. In the cases just cited it was assumed—the point not being involved—that notice of dissolution by advertisement in a newspaper was conclusive "on those who had no dealings with the copartnership." In *Metz v. Bank,* 45 S. C., 216, 23 S. E., 13, it was held that one partner has the right to bind the partnership after date of dissolution, of which no notice to the public was given, "when such liability is for the purpose of winding up the partnership affairs."

But in no case that has come to the writer's attention has it been held in this State that a public advertisement in a newspaper was a prerequisite to the discharge from liability of a retiring partner to creditors

who had no dealings with or knowledge of the firm prior to the dissolution.   Unquestionably, strangers to the firm, who had not dealt with it, but who had knowledge of it, would be entitled to as definite notice of its dissolution as they had of its existence.   As to them, adequate notice by advertisement in the public prints is considered such general notice, and, as intimated in our decisions, is "conclusive."   But even as to that class of customers or creditors advertisement in a newspaper is not the exclusive test of compliance with the outgoing partner's obligation to give "general notice."   As pointed out in *Lovejoy v. Spafford,* 93 U. S., 430; 23 L. Ed., 851:

"It is not an absolute, inflexible rule that there must be a publication in a newspaper to protect a retiring partner. Notice of the dissolution in any other public or notorious manner is proper to be considered on the question of notice." 23 L. Ed., 851, syllabus.   *Cent. Nat. Bank v. Frye,* 148 Mass., 500; 20 N. E., 325; *Solomon v. Kirkwood,* 55 Mich., 261; 21 N. W., 336; *Swigert v. Aspden,* 52 Minn., 569; 54 N. W., 738; *Homberger v. Alexander,* 11 Utah, 377; 40 Pac., 260.

In the case at bar there was testimony to the effect that the fact of the dissolution was "generally known around Charleston"; that notice was given to Bradstreet's and Dun's Mercantile Agencies; that the name of H. W. Wilson was dropped from the firm stationery, etc.   It is a matter of common knowledge that Dun's and Bradstreet's agencies have means for widely disseminating news as to changes affecting the condition and financial responsibility of commercial firms, and it is entirely possible that a publication of a dissolution through such agencies would more effectually serve the public most vitally interested than an advertisement in a local newspaper.   In any event, if the plaintiff had such knowledge, by reputation or otherwise, of the original partnership, as entitled him to require a showing of due negligence on the part of the retired partner

as to giving general notice of the dissolution, we think the evidence of the tenor indicated was sufficient to require the submission of that issue to the jury.

But the verdict was improperly directed for another reason that we consider conclusive. There was evidence in this case tending to establish that the plaintiff not only had never dealt with the original partnership, but had never heard of it until more than a year after the dissolution, and that at the time of the transaction here involved he had no actual knowledge of the existence of the original partnership and of its membership. In that case, and in the absence of evidence tending to show that he was in some way misled to his injury, the plaintiff was not entitled to any notice of dissolution of the pre-existing firm. What we deem the correct rule, supported by both reason and authority, is thus stated by Judge Freeman in a note to *Prentiss v. Sinclair,* 5 Vt., 149, in 26 Am. Dec., at page 291:

· "There seems to be a distinction made, in the case of new customers, between those who had actual knowledge of the existence of a partnership and of its membership and those who had no such information. To protect the former the general notice by advertisement appears specially to apply [citing cases], while as to the latter the giving of any notice would seem to be unnecessary. . . . A person who did not know of the existence of a partnership cannot, after it has been dissolved, say that he relied on its continuing to exist, or that he was induced by that unknown existence to give credit. It is the duty of a new customer to inquire as to the existence and membership of a firm with which he is about to deal, and although that duty is somewhat lessened in favor of those who may have known of the firm, being changed to a duty to keep on the watch for general notice of its dissolution, yet it ought to be enforced as to those who for the first time enter upon business transactions with a supposed partnership of whose

existence they may never have heard." *Austin v. Appling,*
88 Ga., 54; 13 S. E., 955; *Swigert v. Aspden,* 52 Minn.,
565; 54 N. W., 737; *Blanks v. Halfin* (Tex. Civ. App.),
30 S. W. 491; *Chamberlin v. Dow,* 10 Mich., 319; *Bloch
v. Price,* 24 Mo. App., 14; *Thompson v. First Nat. Bank,*
111 U. S., 529; 4 Sup. Ct., 689, 28 L. Ed., 507.

In addition to the evidence tending to establish facts
which made the giving of notice unnecessary under the rule
stated, the testimony of the plaintiff himself was suscep-
tible of the inference that he understood from the letters
received from Wilson & Wilson that Harry G. Wilson was
the owner of the firm, and that there was not "any one
else connected with the firm of Wilson & Wilson, other than
H. G. Wilson." If the plaintiff had actual knowledge which
was tantamount to a personal notice of the dissolution of
any partnership which might formerly have existed (*Irby
v. Vining,* 2 McCord, 379), it could, of course, make no
difference to him whether or not a general notice of dis-
solution of the former firm had been given (*Holtgreve
v. Wintker,* 85 Ill., 472, and other cases cited in note, 26
Am. Dec., 292).

For the reasons stated, the judgment of the Circuit Court
is reversed, and a new trial ordered.

Reversed.