## Case No. 1,293.

### BENEDICT et al. v. DAVIS.

[2 McLean, 347.][1]

Circuit Court, D. Indiana. May Term, 1841.

PARTNERSHIP—WHAT CONSTITUTES —REPRESENTATIONS—EVIDENCE.

1. If an individual hold himself out to the world as a partner in a concern, he is liable as such, though he have no interest in it.

[Cited in Thompson v. First Nat. Bank, 111 U. S. 541, 4 Sup. Ct. 695. See, also, Buckingham v. Burgess, Cases Nos. 2,087, 2,089.]

2. But this holding out must be such as to justify an inference that the creditor had knowledge of it. Or the representation of partnership must be made to him.

[Cited in Thompson v. First Nat. Bank, 111 U. S. 541, 4 Sup. Ct. 695.]

3. A declaration by an individual that he was a partner, to some four or five individuals, of which the creditor, when he trusted the firm, could have had no knowledge, will not constitute a liability.

4. To rebut such declarations, as conducing to establish a partnership in fact, the contract made between the parties, though by parol, may be proved.

5. A court will not grant a new trial, unless the rules of law, and purposes of justice, require it.

[At law. Action by Benedict and others against the administrators of Davis to charge the intestate as a member of the firm of Allison & Co. There was a judgment for defendants, and plaintiffs moved for a new trial. Motion denied.]

Mr. Niles, for plaintiffs.
Mr. Bradley, for defendants.

OPINION OF THE COURT. This action is brought against the defendants to recover from them, as the representatives of Davis, a partner in the house of Allison & Co. The jury found for the defendants, and a motion for a new trial was made on the following grounds:

First: The jury should have been instructed that Davis, having held himself as a partner to the world, was liable as such.

Second: Evidence was given to the jury in regard to the contract between Davis and the Allisons, which should have been excluded.

Third: The weight of the evidence was in favor of the plaintiffs.

Among other evidence conducing to show a partnership between Davis and the Allisons, several witnesses stated that the former represented himself to them, both before and after the purchase of the goods, for the price of which this action was brought, as a partner. And it is insisted that, on this

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

ground alone, he is chargeable as a partner. That where an individual holds himself out as a partner he is liable as such, though, in fact, he had no interest in the partnership concern.

The doctrine of partnership, though pretty well defined, does not seem, on some points, to have been settled on sound principles. It is laid down that if an individual, as a compensation for his labor, agrees to receive a part of the profits, he will be liable as a partner; and yet if he is to receive a certain sum of money in proportion to a given quantum of the profits, he is not so liable. Now, although this is the established doctrine, in the language of Lord Eldon, in reason, it would seem to be impossible to say, that, as to third persons, they are not equally partners. Ex parte Rowlandson, 1 Rose, 89; Ex parte Watson, 19 Ves. 461. Where a person lends his name to a partnership, though, in fact, he has no interest in it, he is liable as a partner. And this rule is founded upon general policy. Waugh v. Carver, 2 H. Bl. 235. Gow, Partn. 23. To create responsibility, as a nominal partner, the allowed use of the name on bills of parcels used by the firm seems to be sufficient, notwithstanding that the creditor was originally ignorant of the introduction of the name. Gow, Partn. 23; Young v. Axtell, 1 Esp. N. P. 29; 1 Serg. & R. 338.

In the case under consideration the declarations of Davis, in regard to his being a partner, as proved, were made at, and in the neighborhood of, Laporte, in Indiana, to residents of that place; the bills were not made out against Davis as a partner, nor was there any evidence conducing to prove that the plaintiffs had any knowledge that he represented himself to be a partner, or, that the plaintiffs, who are citizens of New York, gave credit to the Allisons on his account. And it is important to inquire whether, from this state of facts, he can be held responsible as a partner. The counsel for the plaintiffs earnestly contends that Davis is liable on the above evidence, though it be in fact clear that he had no partnership interest. That this liability does not depend on the credit given by the plaintiffs to him at the time the goods were sold, nor on their having a knowledge of his having held himself out as a partner, but upon the fact of his having so represented himself. In this view of the case, if there be a liability it arises from general policy, that an individual shall be held bound where, by holding himself out to the world as a partner, he has given the influence of his name to the firm. That a contrary doctrine would enable an individual to practice a fraud upon all who gave credit to the firm. Before a reference is made to adjudged cases on this point, it may be proper to remark, that it is difficult to perceive how a fraud can have been practiced on the plaintiffs, if, at the time they sold the goods, they had no knowledge of

Davis, as being connected with the firm, or, as representing himself to be connected with it. It is clear that, under such circumstances, his name or credit could not have operated on the plaintiffs, or in any way influenced their conduct. Such a fraud seems to be too refined for legal comprehension or action. It may be readily admitted that positive proof of knowledge of the above facts, by the plaintiffs, is not necessary to establish the liability of Davis; but such facts must be proved as to authorize the jury to infer this knowledge. This inference might well be drawn from the fact, that the name of Davis was published as a partner in a newspaper, or inserted in a sign over the door of the house in which the goods were kept and sold, or that the bills were made out against him as a partner. But not one of these facts are proved in this case.

In the case of Vice v. Anson, 7 Barn. & C. 409, Lord Tenterden said—the plaintiff, at the time when he supplied the goods, did not know that the defendant either had, or thought she had, any interest in the mine. He did not, therefore, supply the goods on her credit. The fact of her having thought that she had such an interest, that being wholly unknown to the plaintiff at the time when he supplied the goods, will not make her liable for those goods. Her having expressed an opinion in private letters and society that she was interested, might be prima facie evidence that she had an interest; but the other facts in the case show that she had not any interest. This case is more fully reported in 3 Car. & P. 19, and, also, the decision of the court in bank on a motion to set aside the nonsuit which was overruled. In the case of Dickinson v. Valpy, 10 Barn. & C. 128, Mr. Justice Parke said—if it could have been proved that the defendant had held himself out to be a partner, not "to the world," for that is a loose expression, but to the plaintiff himself, or under such circumstances of publicity as to satisfy a jury that the plaintiff knew of it, and believed him to be a partner, he would be liable to the plaintiff in all transactions in which he engaged, and gave credit to the defendant, upon the faith of his being such partner. In Chit. Bills, (Ed. 1839,) 43, it is said, if a person represent himself to be a partner, though, in fact, he was not so, and thereby induce a person to give credit to a concern, he will be liable as a partner; but the representation must be by himself, or by some third person by his authority; and it must be general and public, or to the particular creditor, for a representation only to one or more persons which the creditor never heard of, could not mislead him, and he has no right to avail himself of it, in order to fix a party, who, in fact, was not a partner. These authorities show that, independently of the proof of the fact of partnership, there was no such holding out by Davis to the public, or to the plaintiffs, as to make him liable as a partner, and that the court did not mistake the law in their charge to the jury.

The motion for a new trial can not be granted on the second ground. The complaint here is, that illegal evidence was admitted to show the contract between Davis and the Allisons, in regard to his advance to them of five hundred dollars, the amount of which he was to receive in goods at cost. This evidence was introduced by the defendants to rebut and explain the evidence of a partnership given by the plaintiffs. The terms of the contract were repeated by the parties in the presence of the witness, before one of the Allisons, who purchased the goods, left Laporte for that purpose. Now, it is true this contract was made without the knowledge of the plaintiffs, but, in this respect, it stands upon the same footing as the evidence to prove a partnership. And as they had no knowledge of the one, they can complain of no surprise as to the other. In every view the evidence to prove this contract was legal. Whether it was fraudulently entered into or not, was a matter for the jury.

That the weight of evidence, as to the proof of partnership, was with the plaintiffs, must be admitted. At least this is my view on the subject. But the preponderance is not such as to authorize the court to set aside the verdict and give a new trial. To authorize this it is not enough that the court differ, in their opinion of the evidence, from the jury. There was some impeachment of two or three of the witnesses, from the facts proved, and the circumstances of the case. The jury had the facts fully before them, and gave such weight to the witnesses as they believed them to be entitled to. Under all the circumstances we are not convinced that the rules of law, and the purposes of justice, require a new trial, and the motion is overruled.