## THOMPSON & Another, Administrator, *v.* FIRST NATIONAL BANK OF TOLEDO.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

Submitted April 22d, 1884.—Decided May 5th, 1884.

*Partnership—Trial—Exceptions.*

A person sued as a partner, and whose name is shown to have been signed by another person to the articles of partnership, may prove that before the articles were signed, or the partnership began business, he instructed that person that he would not be a partner.

An exception cannot be sustained to the exclusion of evidence which is not
    shown by the bill of exceptions to have been material.
A person who is not actually a partner, and who has no interest in the partner-
    ship, cannot, by reason of having held himself out to the world as a partner,
    be held liable as such on a contract made by the partnership with one who
    had no knowledge of the holding out.

This action was brought by the First National Bank of
Toledo, Ohio, a national banking association established at
Toledo, against William H. Standley, William H. Whiteside,
Josephus Atkihson, Edward R. Thompson and Joseph Uhl, as
partners in the business of private bankers at Logansport, In-
diana, under the name of the People's Bank, upon a draft for
$5,000, drawn and accepted by the partnership on August
25th, 1877, payable in ninety days after date to the order of
the plaintiff's cashier, and taken by the plaintiff in renewal of a
like draft discounted by it for the partnership on May 5th,
1877.

Thompson filed a separate answer, denying that he was a
member of the partnership, or liable to the plaintiff on the draft
sued on.   He died pending the suit, and it was revived against
his administrators.

Upon a trial by jury, the plaintiff introduced evidence tend-
ing to show that about April 10th, 1871, a partnership known
as the People's Bank was formed at Logansport, for the pur-
pose of carrying on a private banking business there for one
year, and the articles of partnership were reduced to writing
and signed by Standley, Whiteside, Atkinson, Uhl and others
in their own names, and in Thompson's name by Whiteside,
who was his son-in-law and cashier of the partnership ; that
none of the partners other than Thompson and Whiteside were
acquainted with the business of banking ; that late in the
previous winter, or early in the spring, Thompson, who resided
at Delaware, Ohio, was at Logansport, engaged in promoting
the scheme of forming the partnership, and urged Uhl to take
stock in it to the amount of $2,000, and, for the purpose of in-
ducing Uhl to do so, agreed himself to take an equal amount
of stock, and represented that he had had experience in such a
banking partnership, and that it was a money-making institu-

tion, that he was worth about $75,000, and would make Uhl safe if he would join them in forming the partnership, and that he wished to establish it, and Whiteside was to be its cashier; that Uhl, who was a man of means, then agreed to take the same amount of stock as Thompson; that thereupon Thompson, in the presence of Uhl, Standley and others, authorized Whiteside to sign his name to the partnership, and to act for him in the organization of the bank; that the partnership entered upon the business of banking at Logansport with Whiteside as its cashier; and that about April 1st, 1872, some of the partners sold out their interests to other members of the firm, and new articles of partnership were executed, to which Thompson's name was subscribed by Whiteside; but that Thompson was not present, on either occasion, when his name was subscribed to the articles.

The testimony introduced by the plaintiff also tended to show that before the bank commenced business Whiteside caused to be printed blank checks, certificates of deposit, and advertising circulars, bearing the names of the partners, and of Thompson as one of them, which were used in the business of the bank; that from that time until 1876 advertisements were published by Whiteside's direction in a newspaper of Logansport, stating that the partnership was engaged in the business of banking, the names of the partners, and of Thompson as one of them, and that all the persons so named were individually liable for the debts of the partnership; that the fact that Thompson was so advertised as a partner was brought to his knowledge, and he admitted the truth of the published statement; that he at different times during this period, in conversation with the partners and with third persons, admitted that he was a partner, and that he had received dividends upon his shares in the partnership; and on two or three occasions, when in the banking house, was introduced as a director and stockholder in the partnership, and did not deny the fact; that the partnership carried on the banking business at Logansport under the same name from its original formation until August 25th, 1877, when it failed in business, and its assets passed into the hands of a receiver, and that all its members except Uhl

and Thompson were insolvent; and that the plaintiff began to do business with the partnership in October, 1873, and continued to do so until its failure.

The bill of exceptions, after stating the evidence introduced by the plaintiff, added:

"But no testimony was given, showing that the plaintiff or any of its officers had knowledge, during said period, as to the persons who constituted said partnership, or of said advertisements published in the papers of Logansport as aforesaid, or of the fact that the name of Thompson appeared upon said checks and certificates of deposit, or in said circulars as aforesaid, as one of said partners; or that the plaintiff or any of its officers, servants or agents had knowledge of said conversations with Thompson concerning his said alleged connection with said firm, or of any of said alleged statements by him relative to said matters; or that said Thompson had ever held himself out to the plaintiff as a member of said firm."

The defendants introduced evidence tending to contradict the evidence introduced by the plaintiff, and to show that, although Thompson, before the partnership was formed, had a conversation with those who afterwards became partners, on the subject of forming a partnership for banking, he never authorized Whiteside to sign his name to the partnership articles, or to act for him in the organization of the bank, and never agreed to take stock in, or paid any money into the partnership, or participated in its proceedings, or received any dividends, or knew that his name was used in the checks, certificates of deposit, circulars or advertisements of the partnership; that his name nowhere appeared on the books of the partnership, except on the stock book; that, after the checks and certificates of deposit first printed had been used up, new ones were printed on which his name did not appear, and others on which none of the names of the partners appeared; that just before the partnership commenced business Thompson received a letter from Whiteside, enclosing a form of assignment from him to Whiteside of the stock in the partnership for which Whiteside had subscribed in Thompson's name, and that Thompson, after adding the words, "which

you took for me," signed the assignment, and enclosed it in a letter to Whiteside, which Whiteside received, and shortly afterwards posted in the stock book at the place where Thompson's name appeared; and that Whiteside, when he signed Thompson's name to the articles, expected that Thompson would take the stock so subscribed for, and, upon his failure to do so, procured the assignment aforesaid, and himself paid in the capital which he had agreed that Thompson should pay in, and himself received the dividends which would have gone to Thompson.

The defendant offered to prove, by the testimony of Whiteside and his wife, that Thompson, after the time when the evidence for the plaintiff tended to show that he authorized Whiteside to sign his name and to take stock for him as a partner, and before any partnership articles were signed, or the partnership commenced business, instructed Whiteside that he would not become a partner therein. The defendants also introduced evidence that Thompson's letter, enclosing the assignment aforesaid, had been lost after being received by Whiteside, and offered to prove its contents. But the court declined to permit the defendants to prove either of these matters, and excluded the testimony so offered, and the defendants excepted to each of the rulings.

After the testimony had been closed, the defendants requested the court to instruct the jury that "if they found from the testimony that Thompson was not in fact a member of said partnership, the plaintiff could not recover, unless it further appeared from the testimony that Thompson had knowingly permitted himself to be held out as a partner, and that the plaintiff had knowledge thereof during its transactions with said partnership."

The court refused to instruct the jury as requested; and instructed them that the first question for them to determine was whether Thompson was a partner in the firm on August 25th, 1877, and if they found he was, they need not go further, but might, upon that finding, return a verdict for the plaintiff; and that, if they found he was not a partner, it was for them to determine whether he had held himself out, and permitted

the officers of the bank to hold him out to the world as a partner in the business; and upon this branch of the case instructed them, among other things, as follows :

" The defendants' counsel insist that no recovery can be had on this ground, unless the plaintiff shows by the evidence upon the trial of the cause that he gave credit to the bank, looking to the defendant as a part of it ; in other words, that the credit was extended in part to the defendant Thompson. We entertain a different opinion. It is not necessary for the plaintiff to show here that at the time it discounted the acceptance sued on it especially relied upon the defendant Thompson for its payment. If Thompson had held himself out to the world in this public manner, through these advertisements and the other means brought to your attention, as an interested party, as liable for the obligations of the bank, the plaintiff is entitled to the benefit of that fact, without showing that it knew that Thompson was a partner in the bank, or without showing that it specially gave credit to this particular defendant. This publication is of such a character as to entitle the plaintiff to rely upon it, without such proof as the defendants' counsel insist ought to be made here ; that is, that the plaintiff knew of these advertisements, etc., and relied upon Thompson for the payment of this debt."

" If he was not at any time a partner, but still permitted the officers of said bank to hold him out by advertisements and otherwise, as shown in the evidence, and permitted himself to be introduced as a director and stockholder, as is shown by the evidence, if he permitted that to be done, then, as between him and third parties such as the plaintiff, he is estopped from denying his liability as a partner."

The jury returned a general verdict for the plaintiff, upon which judgment was rendered. The defendants, having duly excepted to the refusal to instruct as requested, and to each of the instructions above quoted, sued out this writ of error.

The errors assigned were, 1st, the exclusion of the evidence of Whiteside and wife; 2d, the exclusion of the evidence of the contents of Thompson's letter to Whiteside ; 3d, the refusal

to instruct the jury as requested; 4th, the instructions given and excepted to.

*Mr. C. H. Scribner* for plaintiff in error.

*Mr. Edward Bissell* and *Mr. Wesley S. Thuestin* for defendant in error, claimed that if Thompson so conducted himself as to justify the belief in the community that he was a partner, his estate was responsible for the partnership debts, and cited Colyer on Partnership, § 86; Story on Partnership, §§ 64, 65; *Poillon* v. *Secor*, 21 N. Y. 456; *Kelly* v. *Scott*, 49 N. Y. 595; 1 Green Ev., § 207; *Young* v. *Axtell*, cited in *Waugh* v. *Carver*, 2 H. Bl. 235; *Guidon* v. *Robinson*, 2 Campbell, 304.

Mr. JUSTICE GRAY delivered the opinion of the court. He stated the facts in the foregoing language, and continued:

The plaintiff at the trial sought to charge Thompson with liability as a partner upon two grounds: First, that he was actually a partner. Second, that if not actually a partner he had held himself out to the world as such. And the case was submitted to the jury upon both grounds.

The first and second assignments of error relate to the exclusion of evidence offered by the defendants bearing upon the first ground of action. The third and fourth assignments of error relate to the instructions given and refused as to the second ground of action.

The oral testimony offered by the defendants to prove that Thompson, before the partnership articles were signed, and before the partnership began business, instructed Whiteside that he would not become a partner therein, directly tended to contradict the testimony introduced and relied on by the plaintiff to prove that Thompson was actually a partner, and was erroneously excluded. The first assignment of error is therefore sustained.

From the connection in which the offer of evidence of the contents of the letter from Thompson to Whiteside appears in the bill of exceptions, it is quite possible that this evidence was equally admissible for the same purpose. But the bill of

exceptions is defective in not stating what the contents of the letter were, and not showing that they were material, or that the exclusion of the proof of them was prejudicial to the defendants. The second assignment of error therefore is not sustained. *Packet Company* v. *Clough*, 20 Wall. 528; *Railway Company* v. *Smith*, 21 Wall. 255.

The remaining and the principal question in the case is, whether the liability of Thompson, by reason of having held himself out as a partner, was submitted to the jury under proper instructions.

The court was requested to instruct the jury that if Thompson was not in fact a member of the partnership, the plaintiff could not recover against him, unless it appeared from the testimony that he had knowingly permitted himself to be held out as a partner, and that the plaintiff had knowledge thereof during its transactions with the partnership. The court declined to give this instruction; and instead thereof instructed the jury, in substance, that if Thompson permitted himself to be held out to the world as a partner, by advertisements and otherwise, as shown by the evidence, and to be introduced to other persons as a partner, the plaintiff was entitled to the benefit of the fact that he was so held out, and he was estopped to deny his liability as a partner, although the plaintiff did not know that he was so held out, and did not rely on him for the payment of the plaintiff's debt, or give credit to him, in whole or in part.

This court is of opinion that the Circuit Court erred in the instructions to the jury, and in the refusal to give the instruction requested.

A person who is not in fact a partner, who has no interest in the business of the partnership and does not share in its profits, and is sought to be charged for its debts because of having held himself out, or permitted himself to be held out, as a partner, cannot be made liable upon contracts of the partnership except with those who have contracted with the partnership upon the faith of such holding out. In such a case, the only ground of charging him as a partner is, that by his conduct in holding himself out as a partner he has induced persons

dealing with the partnership to believe him to be a partner, and, by reason of such belief, to give credit to the partnership. As his liability rests solely upon the ground that he cannot be permitted to deny a participation which, though not existing in fact, he has asserted, or permitted to appear to exist, there is no reason why a creditor of the partnership, who has neither known of nor acted upon the assertion or permission, should hold as a partner one who never was in fact, and whom he never understood or supposed to be, a partner, at the time of dealing with and giving credit to the partnership.

There may be cases in which the holding out has been so public and so long continued that the jury may infer that one dealing with the partnership knew it and relied upon it, without direct testimony to that effect. But the question whether the plaintiff was induced to change his position by acts done by the defendant or by his authority is, as in other cases of estoppel in pais, a question of fact for the jury, and not of law for the court. The nature and amount of evidence requisite to satisfy the jury may vary according to circumstances. But the rule of law is always the same, that one who had no knowledge or belief that the defendant was held out as a partner, and did nothing on the faith of such a knowledge or belief, cannot charge him with liability as a partner if he was not a partner in fact.

The whole foundation of the theory that a person who, not being in fact a partner, has held himself out as a partner, may be held liable as such to a creditor of the partnership who had no knowledge of the holding out, and who never gave credit to him or to the partnership by reason of supposing him to be a member of it, is a statement attributed to Lord Mansfield in a note of a trial before him at *nisi prius*, in 1784, as cited by counsel in a case in which it was sought to charge as a partner one who had shared in the profits of a partnership. By so much of that note as was thus cited, which is the only report of the case that has come down to us, it would appear that in an action by Young, a coal merchant, against Mrs. Axtell and another person, to recover for coals sold and delivered, the plaintiff introduced evidence that Mrs. Axtell had lately carried on the coal trade, and that the other defendant did the same under an

agreement between them, by which she was to bring what customers she could into the business, and the other defendant was to pay her an annuity, and also two shillings for every chaldron that should be sold to those persons who had been her customers or were of her recommending; and that bills were made out in their joint names for goods sold to her customers; and that the jury found a verdict against Mrs. Axtell, after being instructed by Lord Mansfield that " he should have rather thought, on the agreement only, that Mrs. Axtell would be liable, not on account of the annuity, but the other payment, as that would be increased in proportion as she increased the business. However, as she suffered her name to be used in the business, and held herself out as a partner, she was certainly liable, though the plaintiff did not, at the time of dealing, know that she was a partner, or that her name was used." *Young* v. *Axtell*, at Guildhall Sittings after Hilary Term, 24 Geo. III., cited in *Waugh* v. *Carver*, 2 H. Bl. 235, 242. But as the case was not there cited upon the question of liability by being held out as a partner, it is by no means certain that we have a full and accurate report of what was said by Lord Mansfield upon that question; still less that he intended to lay down a general rule, including cases in which one, who in fact had never taken any part in or received any profits from the business, held himself out as partner.

In delivering the judgment of the Common Bench in *Waugh* v. *Carver*, Chief Justice Eyre said: " Now a case may be stated, in which it is the clear sense of the parties to the contract that they shall not be partners; that A is to contribute neither labor nor money, and, to go still farther, not to receive any profits. But if he will lend his name as a partner, he becomes, as against all the rest of the world, a partner, not upon the ground of the real transaction between them, but upon principles of general policy, to prevent the frauds to which creditors would be liable, if they were to suppose that they lent their money upon the apparent credit of three or four persons, when in fact they lent it only to two of them, to whom, without the others, they would have lent nothing." 2 H. Bl. 246.

This statement clearly shows that the reason and object of

the rule by which one who, having no interest in the partnership, holds himself out as a partner, is held liable as such, are to prevent frauds upon those who lend their money upon the apparent credit of all who are held out as partners; and the later English authorities uniformly restrict accordingly the effect of such holding out.

In *McIver* v. *Humble*, in the King's Bench in 1812, Lord Ellenborough said: "A person may make himself liable as a partner with others in two ways: either by a participation in the loss or profits; or in respect of his holding himself out to the world as such, so as to induce others to give a credit on that assurance." And Mr. Justice Bayley said: "To make Humble liable, he must either have been a partner in fact in the loss and profit of the ship, or he must have held himself out to be such. Now here he was not in fact a partner, and the goods were not furnished upon his credit, but upon the credit of Holland and Williams." 16 East, 169, 174, 176.

In *Dickinson* v. *Valpy*, in the same court in 1829, Mr. Justice Parke (afterwards Baron Parke and Lord Wensleydale) said: "If it could have been proved that the defendant had held himself out to be a partner, not 'to the world,' for that is a loose expression, but to the plaintiff himself, or under such circumstances of publicity as to satisfy a jury that the plaintiff knew of it and believed him to be a partner, he would be liable to the plaintiff in all transactions in which he engaged and gave credit to the defendant, upon the faith of his being such partner. The defendant would be bound by an indirect representation to the plaintiff, arising from his conduct, as much as if he had stated to him directly and in express terms that he was a partner, and the plaintiff had acted upon that statement." 10 B & C. 128, 140. And see *Carter* v. *Whalley*, 1 B. & A. 11.

In *Ford* v. *Whitmarsh*, in the Court of Exchequer in 1840, a direction given by Baron Parke to the jury in substantially the same terms was held by Lord Abinger, Baron Parke, Baron Gurney and Baron Rolfe (afterwards Lord Cranworth) to be a sound and proper direction; and Baron Parke, in explaining his ruling at the trial, said: "I told the jury that the

defendant would be liable if the debt was contracted whilst he was actually a partner, or upon a representation of himself as a partner to the plaintiff, or upon such a public representation of himself in that character as to lead the jury to conclude that the plaintiff, knowing of that representation, and believing the defendant to be a partner, gave him credit under that belief." Hurlstone & Walmsley, 53, 55.

In *Pott* v. *Eyton*, in the Common Bench in 1846, which was an action by bankers to recover a balance of account against Eyton and Jones, on the ground that either they were actual partners in the business carried on by Jones, or Eyton had by his own permission been held out as a partner, Chief Justice Tindal, delivering the judgment of the court, said : " There was no evidence to show that credit was in fact given to Eyton, or that the bankers knew that his name was over the door of the shop at Mostyn Quay, or that they supposed him to be a partner. One person who had been manager, and another who had been a clerk in the bank, were in court ; and if they could have given such evidence, they would no doubt have been called as witnesses. We must assume, therefore, that credit was given to Jones alone ; and, if Eyton is to be made liable, that must be on the ground of an actual partnership between himself and Jones." 3 C. B. 32, 39. In *Martyn* v. *Gray*, in the same court in 1863, Chief Justice Erle and Mr. Justice Willes expressed similar opinions. 14 C. B. (N. S.) 824, 839, 843. The decision of the Court of Exchequer in *Edmundson* v. *Thompson*, in 1861, is to the like effect. 31 Law Journal (N. S.) Ex. 207 ; *S. C.* 8 Jurist. (N. S.) 235.

Mr. Justice Lindley, in his Treatise on the Law of Partnership, sums up the law on this point as follows : " The doctrine that a person holding himself out as a partner and thereby inducing others to act on the faith of his representations, is liable to them as if he were in fact a partner, is nothing more than an illustration of the general principle of estoppel by conduct." " The expression in *Waugh* v. *Carver*, ' if he will lend his name as a partner he becomes as against all the rest of the world a partner,' requires qualification ; for the real ground on which liability is incurred by holding oneself

out as a partner is, that credit has been thereby obtained. This was put with great clearness by Mr. Justice Parke in *Dickinson* v. *Valpy.*" "No person can be fixed with liability on the ground that he has been held out as a partner, unless two things concur, viz.: first, the alleged act of holding out must have been done either by him or by his consent, and, secondly, it must have been known to the person seeking to avail himself of it. In the absence of the first of these requisites, whatever may have been done cannot be imputed to the person sought to be made liable; and in the absence of the second, the person seeking to make him liable has not in any way been misled." Lindley on Partnership (1st ed.) 45–47; (4th ed.) 48–50.

The current of authority in this country is in the same direction. *Benedict* v. *Davis*, 2 McLean, 347; *Hicks* v. *Cram*, 17 Vermont, 449; *Fitch* v. *Harrington*, 13 Gray, 469; *Wood* v. *Pennell*, 51 Maine, 52; *Sherrod* v. *Langdon*, 21 Iowa, 518; *Kirk* v. *Hartman*, 63 Penn. St. 97; *Hefner* v. *Palmer*, 67 Illinois, 161; *Cook* v. *Penrhyn Slate Co.*, 36 Ohio St. 135; *Uhl* v. *Harvey*, 78 Indiana, 26. The only American case, cited at the bar, which tends to support the ruling below, is the decision of the Commission of Appeals in *Poillon* v. *Secor*, 61 N. Y. 456. And the judgment of the Court of Appeals in the later case of *Central City Savings Bank* v. *Walker*, 66 N. Y. 424, clearly implies that in the opinion of that court a person not in fact a partner cannot be made liable to third persons on the ground of having been held out as a partner, except upon the principle of equitable estoppel, that he authorized himself to be so held out, and that the plaintiffs gave credit to him.

The result is that, both upon principle and upon authority, the third and fourth assignments of error, as well as the first, must be sustained, the judgment of the Circuit Court reversed, and the case remanded to that court with directions to order a

*New trial.*