### R. G. CAMPBELL v. D. K. HUFFINES.

(Filed 11 November, 1909.)

**Partnership—Duplicated Agreement—Annulment of Partnership—Fraud—Innocent Persons.**

> One who has entered into a partnership with another, expressed the agreement in duplicated and signed writings, and then agreed to annul the partnership, leaving the duplicate agreement in the hands of the other party, is liable to a stranger who is thereafter fraudulently induced by the other partner to lend money, in good faith, upon exhibition of the duplicate partnership agreement, within the period of its stated duration, and for purposes within its expressed scope. He has put it within the power of the other partner to commit the fraud, and should suffer loss rather than an innocent stranger who has advanced the money in good faith.

APPEAL by defendant from *Long, J.,* June Term, 1909, of GUILFORD.

The evidence discloses the following facts: One W. H. Harp, on 23 May, 1903, applied to plaintiff for a loan of $500. Harp was in the retail whiskey business, in Greensboro, and doing business in a building owned by defendant. Harp called plaintiff into his place of business. The plaintiff at first declined to make the loan; that Harp was not considered solvent. Harp took from his safe a written contract of partnership between him and defendant, dated 5 June, 1902, which, among other things, stipulated that Harp should manage the business, do the buying,

pay the bills, make all contract, sign all checks and have entire control of the business; that each of the partners was the owner of one-half; that defendant had loaned Harp the money to buy a one-half interest in the business of C. A. Miller & Co.; that the business should be conducted under its then name, C. A. Miller & Co., until 1 July, 1902, and after then should be changed to such name as might be agreed upon; that the partnership should continue until 1 July, 1903. Plaintiff testified that he knew the signature of D. R. Huffines, and, after seeing the written agreement, loaned the money and took note, signed "Harp & Huffines"; that Harp told him the money was needed to pay bills; that Huffines was out of town; that the money would be repaid in a short time; that $200 was repaid him by Harp, by check given him by Harp in the place of business. The defendant admitted signing the contract of partnership; that on the next day thereafter he decided not to proceed further; that he agreed with Harp to cancel the contract; that he tore up his copy and Harp promised to tear up and destroy his copy; that he did furnish Harp the money to buy a one-half interest in the business of C. A. Miller & Co. and took his note for $1,200, and that Harp had paid him $700. The jury found, in response to issues submitted without objection, that the defendant and Harp were partners at the time plaintiff loaned the money, and that the defendant and Harp were both indebted to plaintiff for the balance due. The defendant Huffines alone appealed from the judgment rendered on the verdict.

*John A. Barringer* for plaintiff.
*A. L. Brooks* and *Thomson & Hoyle* for defendant.

MANNING, J.. We think the judgment of the court below is sustainable by the application of a few well-settled principles. The first headnote (which the opinion sustains) of *Cotton v. Evans,* 21 N. C., 284, declares: "A mercantile instrument, given in the partnership name, binds all the partners, unless the person who took it knew or had reason to believe that the partner who made it was improperly using his authority for his own benefit, to the prejudice, or in a way that might be to the prejudice, of his associates." Again, it is declared in that opinion: "In such a case there is a loss to fall on one of two innocent persons; and the question is, which of them ought to bear it? Manifestly he who entrusted the power. It was susceptible of abuse, and he knew that when he conferred it. It is not, in point of form, exceeded; and if it has been employed for a different purpose than that for which it was created, that is a

risk that must have been seen and undertaken from the beginning." This case has been, at this term, cited with approval in *Powell v. Flowers,* in which other cases are cited sustaining the same principle. The defendant signed the articles of partnership; gave Harp, his copartner, a duplicate original; permitted him to keep it; Harp took it out of the iron safe in the place of business, showed it to plaintiff, and plaintiff, knowing the defendant's signature, loaned the money on the faith of it. The date of the loan was within the time stipulated for the duration of the partnership. The defendant put it in the power of his associate, Harp, to mislead the plaintiff and to defraud himself. The question simply is, which should suffer the loss, the plaintiff or the defendant? It is well settled by many adjudications, here and elsewhere, that the party putting it within the apparent power of another to commit a fraud should suffer a loss, rather than a stranger who has innocently and in good faith acted upon this apparent power. *Ellison v. Sexton,* 105 N. C., 356. By the written contract the defendant was an actual partner, not simply an apparent partner. What the partner, Harp, did was strictly within his power, under the written agreement and within the time stipulated for the duration of the partnership. "Where a man holds himself out as a partner, or allows others to do so, he is properly estopped from denying the character he has assumed, and upon the faith of which creditors may be presumed to have acted." 22 Am. & Eng. Enc., 55; *Thompson v. Bank,* 111 U. S., 529. The defendant could easily have seen that the duplicate original held by Harp was destroyed, and the protection of himself from liability would clearly seem to have demanded it. We have carefully examined the exceptions taken by the defendant at the trial, both in the taking of the evidence and to the charge of his Honor, and the authorities cited in the able brief of his attorney, and we find no error. The judgment is therefore

   Affirmed.