## GWINNUP v. WALTON TRUST CO.

No. 7021—Opinion Filed April 30, 1918.

(172 Pac. 936.)

**1. Trial—Motion to Direct Verdict—Question Presented.**

The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence that has been given in favor of the party against whom the motion is directed, together with such reasonable inferences and conclusions as may be drawn therefrom, there is enough competent evidence to reasonably sustain the verdict, if the jury find in accordance therewith.

**2. Partnership—Liability—Holding Out as Partner.**

In an action to charge one for the debts of a partnership because of having held himself out, or having permitted himself to be held out, as a partner, one, who never understood or supposed him to be a partner at the time of dealing with and giving credit to the partnership, cannot charge the ostensible partner with liability, if he was not a partner in fact.

**3. Same—Estoppel—Reliance.**

The liability of one who has held himself out, or permitted himself to be held out, as a partner, rests upon the ground that he cannot be permitted to deny a partnership, which, though not existing in fact, he has asserted or permitted to appear to exist, against one dealing with such partnership, knowing and relying upon such assertion or permission and who has been induced to change his position thereby, and, as in other cases of estoppel in pais, whether or not in reliance upon such assertion or permission he dealt with the partnership is a question of fact for the jury and not of law for the court.

(Syllabus by Rummons, C.)

Error from Superior Court, Muskogee county: Farrar L. McCain, Judge.

Action by H. G. Gwinnup against the Walton Trust Company, a corporation. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

H. G. Gwinnup and Ames, Chambers

Lowe & Richardson, for plaintiff in error.

Furry & Motter, for defendant in error.

Opinion by RUMMONS, C. The parties will be referred to here as they appeared in the court below. The plaintiff commenced this action against the defendant, alleging that, in consideration of $4,150 paid by plaintiff to defendant, the defendant agreed to appoint plaintiff as its agent in soliciting and procuring farm loans in Northeast Oklahoma at Vinita and Muskogee; that the defendant refused to comply with its agreement and failed and neglected to make the plaintiff its agent as agreed. The petition prays the recovery of the sum of $4,150 paid defendant by plaintiff and $25,000 as damages for breach of the contract. The defendant filed an answer and amendment thereto denying the allegations of the petition and alleging that F. M. Gwinnup and plaintiff were partners, doing business under the firm name of F. M. Gwinnup & Son, engaged in the farm loan business as agents of the defendant, having offices at Vinitia and Muskogee; that such partnership had existed from 1907 to 1913 when it was dissolved by the death of F. M. Gwinnup; that during said period the said partnership had been extensively engaged in making farm loans for the defendant; and that at the time of the death of F. M. Gwinnup said firm was indebted to the defendant in the sum of $4,150, being money paid to said firm by the defendant upon loans approved by the defendant, but which money had not been paid by said firm to the borrowers, and interest due the defendant collected by said firm and not paid over to defendant. The defendant further alleged that the sum of $4,150 paid by plaintiff to the defendant was paid in satisfaction of the indebtedness of said firm of F. M. Gwinnup & Son to the defendant which the plaintiff as a member of said firm was legally liable to pay the defendant; that the agreement alleged in the petition of plaintiff, if made, was without consideration and void and unenforceable. By an amendment to its answer the defendant alleged that the plaintiff by means of the stationery used by him in his correspondence with the defendant had held himself out as a member of the firm of F. M. Gwinnup & Son, and he had permitted F. M. Gwinnup to hold him out to the defendant as a member of said firm; that defendant relied upon the representations of the plaintiff and the representations of F. M. Gwinnup, made with the knowledge of plaintiff, and believed that the plaintiff was a member of the firm of F. M. Gwinnup & Son; and that, acting upon such belief, the defendant did business with said firm and advanced the sum of $4,150 subsequent-

ly paid by plaintiff to defendant; that by his acts and conduct in so holding and permitting himself to be held out as a member of said firm of F. M. Gwinnup & Son, and by reason of the fact that defendant relying upon such ostensible partnership had advanced said sums of money, the plaintiff was estopped from denying that a partnership actually existed between him and said F. M. Gwinnup. The plaintiff replied denying the allegations in the answer and the amendment thereto. At the conclusion of the evidence the court directed a verdict for the defendant, the plaintiff excepting thereto. Judgment being rendered upon this verdict, the plaintiff brings this proceeding in error to reverse the judgment of the trial court.

The evidence in this case is very voluminous, covering correspondence between the plaintiff and his father, F. M. Gwinnup, and the defendant over a period of about six years. We will not attempt to set out and review all of the same, but will content ourselves by setting forth the contentions of the respective parties upon the evidence. It is the contention of the plaintiff that his father was engaged in the farm loan business for himself alone at Vinita, Okla., doing business under the name of F. M. Gwinnup & Son; that he was engaged in the farm loan business at Muskogee, doing business under the firm name of F. M. Gwinnup & Son; that his father was the agent of the defendant and he was a subagent of his father; that his father paid the expenses of the Vinita office and received all the profits of the business of that office; that he paid the expenses of the Muskogee office and received all the profits of that office; that he had other connections in the farm loan business at Muskogee; that the farm loans that he secured for the defendant were all closed through his father's office at Vinita; that he had repeatedly attempted to get the defendant to recognize him as its agent and do business with his Muskogee office direct, but it had always refused to do so; that there was a division of territory between him and his father, and his father paid him all the commissions on business obtained by him; that when his father died his father was short in his accounts with defendant in the sum of $4,150, which sum he paid to the defendant upon the defendant's agreement that it would transfer his father's business to him and make him their agent in Northeast Oklahoma, which agreement it subsequently refused to carry out.

It is the contention of the defendant that the agreement to employ plaintiff as its

agent, after his father's death, was never entered into; that its first connection with the plaintiff or his father arose from an application written by his father upon a letter head entitled "F. M. Gwinnup & Son, Offices at Vinita and Muskogee," in which his father solicited the farm loan business of the defendant in Northeast Oklahoma; in that letter it was stated that the firm had offices at Vinita and Muskogee; that F. M. Gwinnup & Son were employed as the agents in Northeast Oklahoma of the defendant and an account opened up by defendant with F. M. Gwinnup & Son; that most of the checks for loans were made payable to F. M. Gwinnup & Son; that the plaintiff deposited checks payable to F. M. Gwinnup & Son indorsed in the firm name by himself as a member of the firm; that during all of the period plaintiff in his correspondence with the defendant continually held himself out as a member of the firm; that defendant relied upon such representation; that after the death of F. M. Gwinnup, there being some funds in a bank at Pryor to the credit of F. M. Gwinnup & Son, plaintiff drew a check for said funds, signing the same F. M. Gwinnup & Son by H. G. Gwinnup, surviving partner; that plaintiff made an affidavit and secured the affidavit of his mother and sister, the only other heirs of F. M. Gwinnup, to the effect that the firm of F. M. Gwinnup & Son consisted of F. M. Gwinnup and H. G. Gwinnup and no other person had any interest therein.

The plaintiff explained the giving of the check and the making and procuring of affidavits, on the ground that, the funds in the Pryor bank being the property of the defendant, the check was drawn and the affidavits made at the suggestion of counsel for defendant in order that defendant might procure the funds without the expense of an administration of the estate of F. M. Gwinnup. It is further contended by plaintiff that the defendant never believed that he was a member of the firm of F. M. Gwinnup & Son and never treated him as such and that defendant regarded F. M. Gwinnup as their only agent in that part of Oklahoma.

The rule as to the determination of whether or not a trial court was right in directing a verdict is well established in this state as laid down in Reed Grocery Co. v. Miller, 36 Okla. 134, 128 Pac. 271, as follows:

"The question presented to a trial court on motion to direct a verdict is whether admitting the truth of all the evidence that has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn therefrom, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith."

This rule has been followed by this court in numerous cases.

There was evidence in the case entitling the plaintiff to go to the jury upon the question of whether or not he was a partner in the firm of F. M. Gwinnup & Son, unless the evidence conclusively established the fact that he was estopped from denying such partnership because he had held himself out to defendant as such partner and the defendant relying thereon had extended credit to the firm. If there was any competent evidence from which the jury might have concluded that the plaintiff was not thus estopped, the trial court erred in directing a verdict for the defendant.

The rule as to the liability of a person as a partner, because he has held or permitted himself to be held out as such, when in fact no partnership existed, is well stated in the case of Thompson v. First National Bank of Toledo, 111 U. S. 529, 4 Sup. Ct. 689, 28 L. Ed. 507, as follows:

"A person who is not in fact a partner, who has no interest in the business of the partnership and does not share in its profits, and is sought to be charged for its debts because of having held himself out, or permitted himself to be held out, as a partner, cannot be made liable upon contracts of the partnership, except with those who have contracted with the partnership upon the faith of such holding out. In such a case, the only ground of charging him as a partner is that by his conduct in holding himself out as a partner he has induced persons dealing with the partnership to believe him to be a partner, and, by reason of such belief, to give credit to the partnership. As his liability rests solely upon the ground that he cannot be permitted to deny a participation which, though not existing in fact, he has asserted, or permitted to appear to exist, there is no reason why a creditor of the partnership, who has neither known of nor acted upon the assertion or permission, should hold as a partner one who never was in fact, and whom he never understood or supposed to be a partner, at the time of dealing with or giving credit to the partnership.

"There may be cases in which the holding out has been so public and so long continued that the jury may infer that one dealing with the partnership knew it and relied upon it, without direct testimony to that effect. But the question whether the plaintiff was induced to change his position by acts done by the defendant or by his authority is, as in other cases of estoppel in pais, a question of fact for the jury, and not of law for the court. The nature and amount of evidence requisite to satisfy the jury may vary according to circumstances. But the rule of

law is always the same; that one who had no knowledge or belief that the defendant was held out as a partner, and did nothing on the faith of such a knowledge or belief, cannot charge him with liability as a partner if he was not a partner in fact."

If the defendant did not believe that the plaintiff was a partner in the firm of F. M. Gwinnup & Son and did not consider him a member of the firm in its dealings with such firm, the plaintiff is charged with no liability for moneys advanced F. M. Gwinnup & Son, if in fact the plaintiff was not a member of such firm.

There are in the record two pieces of evidence which are pertinent to this question. The plaintiff testified that on the day of his father's death he had a conversation in his father's office at Vinita with Mr. Frank Allen, the secretary of the defendant, in which Mr. Allen said:

"Harry, this is a great shock to me to lose your father. He has been a very valuable agent and understood the business, and he has built up a wonderful business here and it is worth a great deal of money to a man who would step in here and take over the business. Now, Mr. Burris has told me, and I know that you did not know a thing about that shortage, and I know that we cannot hold you responsible, lawfully, for it; but you cannot expect to jump in here and take over this big business and get the benefits from it unless you will go in and pay that shortage and put this business in straight circumstances with the company."

Plaintiff was corroborated by his brother-in-law as to this conversation.

On October 21, 1912, Frank Allen, secretary of defendant, wrote plaintiff the following letter:

"Dear Sir: I have your letter of the 17th, with application of Kenny for loan of $1,-200.00. Papers will be sent you for execution and we will make it draw interest from December 1st, as requested.

"I note your remarks regarding your father and I certainly regret very much that he is ill and unable to attend to business. I have been expecting that, owing to your father's age that it was only a matter of time until he would be unable to take care of the large and profitable business he has worked up at Vinita, and it has often occurred to me that you, being in the same business and having knowledge of same, would be a great deal of help to your father in his old age. Under the circumstances I believe he has more business to attend to than his time and strength will permit. I can very easily understand why a city life is more attractive to a young man like yourself and that no doubt it is more agreeable to you to live in a city than to live in a small town like Vinita. I don't

know how you feel about it, under the circumstances if it were my father I would go to him and stay with him and do all in my power for him although I had to sacrifice some myself. A boy's first duty is to his parents, all other things come second.

"We have never wanted to have an agent at Muskogee, but we do think a good deal of the business at Vinita and realize the fact that we have a large business there. Should your father become unable to work and attend to this business, so far as I am concerned I don't know who would attend to it. Mr. Burris is doing the best he can to take care of it. He is a good man, but we need Mr. Burris on the road examining farms. I don't see how we are going to get along without him, neither do I see how he is going to take care of that work and take care of the office work of Gwinnup & Son at Vinita.

"Personally I have a very high regard for your father and I have done what I could to encourage him in the loan business, I should regret very much indeed if he should drop it, but I would feel if you were there to help Mr. Burris that the business would go on as usual.

"Pardon these suggestions from some one who has no right to make them. That is the way I look at it, and I believe I am right.

"It is the policy of the Walton Trust Company, not to have very many agents. At present we only have two in Oklahoma and up to this time have found that number sufficient. It makes it easier for us to handle the business.

"Would be pleased to hear from you again on this subject. Yours truly, Frank Allen. FA. J. N."

The moneys which were claimed by the defendant and which were repaid by the plaintiff were transmitted to F. M. Gwinnup at Vinita, between March 1, 1913, and the date of his death, so that the indebtedness arose after the writing of the letter of October 21, 1912. The language used in that letter, to the effect that, if plaintiff's father became unable to attend to the business, so far as the writer was concerned, he did not know who would attend to it; is hardly compatible with the theory that the defendant was writing to a member of the firm who was doing its business. Other expressions in the letter also are hardly reconcilable with the theory of the defendant that it regarded the plaintiff as a member of the firm of F. M. Gwinnup & Son. The statement alleged to have been made to the plaintiff in the presence of his brother-in-law by Mr. Allen, to the effect that the plaintiff was not responsible for the shortage and could not legally be held for it, as clearly incompatible with defendant's theory. If the defend-

ant believed that plaintiff was a member of the firm of F. M. Gwinnup & Son to whom it had furnished these funds, its secretary would hardly be expected to make a statement that the plaintiff could not legally be held liable for them. Under the rule set out in Thompson v. First National Bank of Toledo, supra:

"The question, whether the plaintiff was induced to change his position by acts done, by the defendant or by his authority is, as in other cases of estoppel in pais, a question of fact for the jury and not of law for the court. The nature and amount of evidence required to satisfy the jury may vary according to circumstances."

If the jury believed the evidence of the plaintiff as to the conversation with Allen, it was a circumstance which they were entitled to consider in determining whether or not the defendant acted in reliance upon the representation that plaintiff was a member of the firm. The jury was also entitled to draw its own conclusion from the letter written by the defendant before the indebtedness arose as to whether or not the defendant regarded plaintiff as a member of the firm. We therefore conclude, under the rule laid down in Reed Grocery Co. v. Miller, supra, that, admitting the truth of the evidence given in favor of the plaintiff and such inferences and conclusions as may be drawn therefrom, there was evidence in the record entitling the plaintiff to have the question of whether or not he was estopped from denying that he was a member of the firm of F. M. Gwinnup & Son submitted to the jury. The trial court therefore erred in directing a verdict.

The judgment of the trial court should be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.