JOHN H. LOOK *vs.* C. A. WATSON.

Franklin.    Opinion November 22, 1919.

*Principal and agent.   Rule as to liability of one who holds himself out as a partner even though such partnership does not exist.*

1.   The court adheres to its decision as reported in *Look* v. *Watson & Sons*, 117 .Maine, 476, that a defendant who holds himself out as a partner is liable to a plaintiff who believing in and relying upon such partnership enters into a contract involving the giving credit to it.   This principle applies although the defendant is not a partner and notwithstanding that such supposed partnership is in fact, but without the plaintiff's knowledge a corporation.

2.   Upon defendant's contention that the barrels of apples were misbranded in violation of R. S., Chap. 36, Sec. 29, the court is of the opinion that defendant has not sustained his contention.

3.   If the apples, when packed, were graded according to the Maine standard, the defendant has no cause of complaint, even if that standard might be below the local standard in the Chicago market.

Action of assumpsit to recover the value of certain merchandise sold to defendant.   Defendant filed plea of general issue and also · brief statement denying individual liability.   The principal contention of defendant was set forth particularly in the case of *Look* v.

*Watson & Sons* reported in 117 Maine, page 476.   At close of testimony in the present case it was reported by agreement of counsel to the Law Court to decide all questions of law and fact involved. Judgment in accordance with opinion.

Case stated in opinion.

*Frank W. Butler*, for plaintiff.

*Elmer E. Richards, Sumner P. Mills*, for defendant.

SITTING:   CORNISH, C. J., HANSON, PHILBROOK, DUNN, MORRILL, DEASY, JJ.

MORRILL, J.   When this cause was before us on a former occasion (117 Maine, 476) we held that the liability of C. A. Watson was established, applying to this case the principle that "a defendant who holds himself out as a partner is liable to a plaintiff who, believing in and relying upon such partnership, enters into a contract involving the giving of credit to it."   This principle, we said, "applies although the defendant is not a partner and notwithstanding that such supposed partnership is in fact, but without the plaintiff's knowledge, a corporation."

The exceptions were sustained, however, because the verdict was directed against C. A. Watson, R. A. Watson and George Watson, and, whatever might be the status of R. A. Watson, the evidence showed that George Watson was not a partner, and failed to show that he held himself out as such.

The plaintiff has now amended his writ by striking out the names of R. A. Watson and George Watson and proceeds against C. A. Watson alone.   Upon a careful consideration of the evidence now presented we have no reason to change our former conclusion.   The liability of C. A. Watson is again abundantly shown.

But defendant's counsel strenuously insists that the contract to buy apples was made by the plaintiff during the last of October or the first of November, 1917; that the apples were bought before the plaintiff ever saw C. A. Watson; that at the only interview between the plaintiff and C. A. Watson the purchase of the apples was not considered, only the shipping of apples already purchased; consequently, counsel says, the plaintiff could not have given credit to C. A. Watson. This might be material, if the name of C. A. Watson had not appeared in the business name and style of C. A. Watson & Sons, which now

appears to be the name of an Illinois corporation. *Smith* v. *Hill et als.*, 45 Vt., 90. The important facts are that the defendant loaned his name for use in the corporate name of a corporation for which he worked and which, in some degree at least, he represented; the latter name, C. A. Watson & Sons, "signifies to the ordinary mind not a corporation but a partnership of which C. A. Watson is a member;" the plaintiff dealt with C. A. Watson & Sons through their agent; he bought the apples for C. A. Watson & Sons; he knew C. A. Watson &. Sons, only as indicated by the name; he relied upon that name, not as the name of a corporation, but, as it appeared, as the name of a partnership; and neither the agent, J. P. Barrett, if, in fact, he knew to the contrary, nor the defendant himself informed him otherwise. The defendant must be held liable to the plaintiff. Cases cited in former opinion; *Benedict* v. *Davis*, 2 McLean, 347; 3 Fed. Cases, No. 1293.

The number of barrels stated in the writ, and the price charged therefor, is conceded to be correct; the item of $108.75 for work at Dixfield is not disputed; but defendant claims that the apples did not answer the description marked upon the barrels; that they were mis-branded in violation of R. S., Chap. 36, Sec. 29; and he claims a deduction of $237.25. Here the burden is upon the defendant. *Lyons* v. *Jordan.* 117 Maine, 117.

In the car in question were 182 barrels of apples. The plaintiff says, "they were very nice quality; as good a car as I shipped during the year." The quality of the apples to be furnished by plaintiff does not appear; hence the only requirement was that they should be merchantable and correctly graded, and the barrels marked as required by law. It appears from the testimony of both Mr. Look and J. P. Barrett, the agent of C. A. Watson & Sons, that the con-signees had not found fault with previous shipments; Mr. Barrett says, however, that "they said that the Maine standard was below what they expected." The defendant personally directed that the car lot in question should be shipped. When the apples arrived in Chicago eight of the barrels were examined, and those marked No. 1 were graded Fair No. 2, and those marked No. 2 were graded, Fair No. 3. It does not appear that this grading was or was not according to the Maine standard, which calls for Fancy, Number one or class one, Number two or class two, and unclassified. R. S., Chap. 36, Sec. 27. If the apples, when packed, were graded according to the

Maine standard, the defendant has no cause of complaint, even if that standard might be below the local standard in the Chicago market. We think that defendant has not sustained the burden of showing that the barrels were misbranded.

> *Judgment for the plaintiff*
> *for $763.95 with interest*
> *from date of writ.*