## DULIEN v. ST. LEWIS.

### No. 11163.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 28, 1952.

Decided July 24, 1952.

---

Irwin Geiger, Washington, D. C., for appellant.

Roy St. Lewis, pro se.

Before EDGERTON, WILBUR K. MILLER and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

Appellee, an attorney, brought this action in the United States District Court for the District of Columbia to recover the value of services rendered to the buyer of certain surplus railroad equipment from the War Assets Administration. The services were performed at the request of one Fred Friedeberg, a dealer in surplus Government property, who was negotiating the purchase in the name of "Fred Friedeberg, doing business as D & F Ventures." Friedeberg died not long after the suit was commenced. Recovery was sought from appellant Dulien on the asserted ground that the services were rendered to D & F Ventures as purchaser, and that D & F Ventures was a partnership or joint venture composed of appellant and Friedeberg. Dulien denied that he was a partner in the enterprise and hence that he was obligated to pay appellee for his services. The District Court, sitting without a jury, gave judgment for appellee, after finding explicitly that "although the evidence with respect to ownership and membership of D & F Ventures is conflicting and supports different inferences, the Court holds the plaintiff has sustained the burden of proof that said joint adventure was composed of Fred Friedeberg and Louis Dulien, defendants herein named, and as such are liable."

The evidence introduced at the trial does not provide a legally sufficient basis for this finding. Direct proof as to the composition of D & F Ventures was submitted by appellant, in the form of a copy of a joint-venture agreement listing "Ruth J. Friedeberg (wife of Fred Friedeberg), and Dulien Steel Products, Inc., a Washington corporation," as the members of the venture,[1] and designating Fred Friedeberg as his wife's agent. This document is silent as to personal membership on the part of Dulien and personal liability on his part for the debts of the firm; indeed, it raises an inference against both. In correspondence with appellee (all after the services in question were performed), appellant consistently signed himself as "Louis Dulien, President, Dulien Steel Products, Inc."[2] Appellee addressed him in that manner.

---

1. Appellant's testimony on deposition, taken at his own instance, was to like effect.

2. For example, Dulien so signed himself in a letter of May 6, 1948, wherein he expressed his "earnest desire to see this [fee] matter amicably settled." This letter mentions certain decisions which "we" had made, evidently referring to

Appellee testified that Friedeberg often referred to Dulien as his partner, in conversations with appellee. But Friedeberg's reported statements were inadmissible against Dulien to show that the two of them were partners and liable jointly for debts incurred by Friedeberg—at least in the absence of a prima facie showing of partnership established by other evidence. The trial judge so ruled, and correctly. Pleasants v. Fant, 89 U.S. 116, 22 Wall. 116, 22 L.Ed. 780; 40 Am.Jur. 187. Such other evidence was lacking. It is not to be found either in the documentary exhibits or in the testimony.

Appellee emphasizes a telephone conversation he had with Dulien shortly after Friedeberg's request to appellee for assistance in connection with the surplus equipment sale. Concerning this, the first communication between the parties to this appeal, appellee testified:

> "That day [January 23] I had a long distance telephone call from a Louis Dulien asking me what had been done. I told him over the telephone that I had not concluded the matter yet and I wouldn't know until the following Monday, and that I was advising Friedeberg. (App. 15)
>
> \* \* \* \* \* \*
>
> "\* \* \* I did have a conversation with Louis Dulien when he called me on January 23, and asked if I was to be paid.
>
> "Now, whether that was the source of his complaint then, I don't know. But Louis Dulien assured me that I would be paid." (App. 18)

At no point in the report of this conversation is the nature of appellant's interest in the transaction stated—whether as a friend of Friedeberg's, as President of Dulien Steel Products, Inc., or in some other ca-

pacity. The assurance to appellee that he "would be paid" does not imply that appellant, rather than Friedeberg or the partnership or appellant's corporation, would provide the payment. At most it implies that Dulien would act as surety. The conversation, as reported by appellee, does not justify a finding that appellant was interested in the sale individually, as a partner of Friedeberg.

It was Friedeberg who negotiated the purchase from the War Assets Administration and Friedeberg who retained appellee. What, then, was appellant's connection with the transaction? The evidence discloses in substance that a corporation of which appellant was president and active head was a partner or co-adventurer in the firm making the purchase. The record tells us nothing concerning his stockholding in this corporation or the extent of his control over its affairs. There is no showing that he directly or personally benefited from the transaction, or that circumstances existed which would justify the court in disregarding the corporate form and depriving appellant of the protection against personal liability which he sought and which corporate organization normally provides.[3] See 1 Fletcher, Cyclopedia of Corporations (Perm.Ed.) § 41 et seq. Nor was any attempt made to show that Dulien induced appellee to believe, prior to the doing of the work, that he would be personally obligated to pay for appellee's services. Appellee did not plead or seek to prove estoppel. See Mechem, Partnership §§ 102–08; Thompson v. First Nat. Bank, 111 U.S. 529, 4 S.Ct. 689, 28 L.Ed. 507; Uniform Partnership Act § 16.

Finding no basis for holding appellant personally liable, we reverse the judgment without reaching the other questions in the case.

Reversed.

---

Friedeberg and himself—but without stating in what capacity he had acted. The letter also speaks of "our" attorney, but adds: "when I say 'our attorney' I refer to the attorney for the D & F Ventures."

3. It is suggested that a corporation cannot legally become a member of a part-

nership or joint venture. But see Uniform Partnership Act §§ 2, 6; Remington's Rev.Wash.Stat. §§ 9975–41, 9975–45 (Supp.1945). And even if the corporation could not be a partner, it does not follow that Dulien is to be substituted in the place of the corporation and made subject to personal liability.